**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| WENDELL H. STONE COMPANY, INC. d/b/a STONE & COMPANY, individually and on behalf of all others similarly situated, | Case No. 1:16-cv-07648 |
| Plaintiff, | Hon. Matthew F. Kennelly |
| v. | |
| LKQ CORPORATION, a Delaware corporation, | |
| Defendant. | |

**PLAINTIFF WENDELL H. STONE COMPANY INC.'S
<u>MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

1

## I.     INTRODUCTION

This case presents an alleged class action under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. challenging certain facsimiles sent by Defendant LKQ Corporation ("LKQ" or "Defendant"). Plaintiff Wendell H. Stone Company, Inc. d/b/a Stone & Company ("Stone" or "Plaintiff") is pleased to announce that following a frank exchange of information— that included a formal mediation overseen by Magistrate Judge Morton Denlow (Ret.) of JAMS in Chicago—the Parties have reached an agreement on the terms of a class action settlement ("Settlement" or "Agreement") that provides meaningful relief to the Settlement Class Members.

The strength of the Settlement cannot be seriously disputed. Defendant LKQ has agreed to establish a Settlement Fund of $3,266,500 to pay cash awards to Settlement Class Members. There is **no claims process**—all 6,533 Settlement Class Members who remain in the Settlement (*i.e.*, who do not file any request to be excluded) will receive an equal cash payment from the Settlement Fund. There is also **no reverter**: any monies that remain in the Settlement Fund due to uncashed checks (of which there should be few) will be directed to two *cy pres* recipients. Ultimately, if the Court awards amounts from the Settlement as contemplated by the Agreement the Settlement Class Members will receive checks for approximately $300—a per claim amount that nearly doubles the amount typically awarded in TCPA class action settlements. And the Settlement additionally features strong prospective relief designed to bring LKQ's faxes into compliance with the TCPA and applicable regulations.

When the strength of such benefits are weighed against LKQ's potential defenses (particularly the uncertainty surrounding TCPA fax claims given the pending appeal in the D.C. Circuit of the FCC's 2015 TCPA Order, *ACA Int'l v. FCC*, No. 15-1211 (D.C. Cir.)), it is clear that the instant Settlement provides the Class with relief that is fair, reasonable, and adequate. As

2

such the Court should grant preliminary approval and order that notice be disseminated to the Settlement Class in accordance with the Agreement's terms.

## II.      FACTUAL & PROCEDURAL BACKGROUND

### The Coast Distribution System's Faxes to Stone and Others

Defendant LKQ is the successor in interest, by way of a merger, of a company known as The Coast Distribution System, Inc. ("Coast Distribution"). Coast Distribution was a supplier to recreational vehicle, towing, and outdoor power equipment retailers. (Compl. ¶¶ 2-4 (Dkt. 1)). In its effort to sell vehicle, towing, and outdoor power equipment products, Defendant conducted (and apparently continues to conduct) a wide scale marketing campaign that features the repeated sending of facsimile messages to consumers and businesses, allegedly without prior express permission or invitation. (Compl. ¶¶ 7, 12). Critical to this lawsuit, Coast Distribution's facsimiles also failed to display proper opt-out language as required by 47 C.F.R. § 64.1200, *et seq*. (Compl. ¶ 19.)

LKQ sent three (3) faxes to Stone in June and October 2015 allegedly without permission or prior dealings. (Compl. ¶ 12.) On July 28, 2016, Stone filed its Complaint alleging that the faxes violated the TCPA. (*See* Dkt. 1.) Given that the opt-out language on the faxes was squarely deficient and that the faxes appeared to be sent using a template, Stone sought relief both individually and on behalf of an alleged class.

### LKQ Appears in the Case, and the Parties Exchange Information Informally

Plaintiff obtained service on LKQ and, on September 9, 2016, LKQ formally appeared in the case. (Dkt. 4.) So as to safeguard the class against any attempt to "moot" the case through a Rule 67 or 68 offer, proposed Class Counsel filed a placeholder Motion for Class Certification.

(Dkt. 12.)[1]

From an early point in the proceedings counsel for LKQ and the alleged class engaged in frank and open discussions regarding each side's positions in the lawsuit. (Declaration of Steven L. Woodrow, "Woodrow Decl.", attached hereto as Ex. A, ¶ 5.) These talks helped facilitate an open dialogue through which information central to the case—including information about the size of the alleged class and Coast Distribution's sending of the faxes and potential prior relationships with Plaintiff and other class members—was ultimately disclosed without the need for formal discovery. (*Id.*)

Equipped with this information, Stone was prepared to intelligently discuss a fair resolution of the matter.

### The Parties Engage in Mediation with the Honorable Morton J. Denlow (Ret.) of JAMS in Chicago

Following the initial exchange and review of information regarding the claims and potential for class certification, the Parties agreed to engage in an early mediation with the Honorable Morton J. Denlow (Ret.) of JAMS in Chicago. (Woodrow Decl. ¶ 6.) Through this process the Parties exchanged additional information about the size of the class and the nature of Coast Distribution's prior business dealings with several of the class members. (*Id.* ¶ 7.) This was relevant given the D.C. Circuit's present review of the FCC's 2015 TCPA Order, including the Commission's ability to require opt-out language on faxes sent by persons who have prior business relationships with fax recipients. (*Id.*)

Ultimately, and with Judge Denlow's substantial assistance, the Parties were able to reach

---

[1] The placeholder motion was filed in direct response to Judge Chang's decision in *Fulton Dental v. Bisco*, No. 1:15-cv- 11038 (N.D. Ill.) (stating that there is "wide disagreement on the applicability of Rule 67 to proposed class actions like this one" and finding claim moot where no placeholder motion for certification had been filed.)

4

an agreement in principle with respect to the Settlement's key terms, which are set forth in Section III, below. (Woodrow Decl. ¶ 8.) Only after an agreement was reached with respect to the relief to be made available to the Settlement Class did the Parties discuss reasonable attorneys' fees and incentive awards. (*Id.*) The Parties left the mediation with a signed term sheet and worked together in the weeks following the mediation to quickly draft formal settlement documents and have them executed. (*Id.* ¶ 9.)

## III.    KEY TERMS OF THE SETTLEMENT

The core terms of the Settlement are summarized briefly below, and are set forth in full detail in the Settlement Agreement, which is attached as Exhibit B:

**A.    Class Definition:** The "Class" or "Settlement Class" as defined in the Settlement as: all persons in the United States who were successfully sent at least one facsimile advertisement from The Coast Distribution System, Inc. from July 28, 2012 to the date Notice is sent to the Class.

**B.    Monetary Relief:** The primary relief made available in this case is a Settlement Fund of $3,266,500 from which all monies due under the Settlement are to be paid. There is no claims process. Rather, checks will be sent to each Settlement Class Member who appears on the Class List and who does not opt-out/request to be excluded. The amount of each payment will be equal to the Settlement Class Member's proportionate share of the Settlement Fund after subtracting Settlement Administration and notice expenses and any incentive award and reasonable attorneys' fees awarded by the Court. If all amounts anticipated by the Agreement were approved by the Court, it is estimated that each Settlement Class Members will automatically recover approximately $300 each, which doubles the typical recovery in TCPA class action settlements. (Woodrow Decl. ¶ 11.) Monies left in the fund as a result of uncashed

checks will be paid to two *cy pres* designees to be approved by the Court. (Settlement Agreement § 2.1(c).)

      **C.**     **Prospective Relief:** In addition to the cash relief, for a period extending twenty-four (24) months after the Effective Date of the Settlement, LKQ has agreed that to the extent it decides to send commercial faxes that it will, subject to any changes in applicable law, include appropriate opt-out language on such faxes. (*Id.* § 2.2.) Proposed Class Counsel is tasked with reviewing such language to ensure compliance with applicable law.

      **D.**     **Payment of Notice and Administration Expenses, Including Notice**: Defendant has agreed to pay from the Settlement Fund all reasonable Settlement Administration Expenses incurred by the Settlement Administrator, Kurtzman Carson Consultants LLC ("KCC") including those related to disseminating the Class notice, processing opt-outs and objections, if any, and sending checks. (*Id.* § 1.35.)

      **E.**     **Incentive Award and Reasonable Attorneys' Fees**: Defendant has agreed that Class Counsel shall be entitled to an award of attorneys' fees and costs in an amount to be approved by the Court and paid from the Settlement Fund that is not to exceed one-third of the Settlement Fund. Class Counsel has agreed to limit any such request for attorneys' fees to no more than one-third of the Settlement Fund (*id.* § 8.1) (and nothing in the Settlement requires Class Counsel to seek the full amount). LKQ has also agreed to pay from the Settlement Fund, subject to Court approval, an incentive award to the class representative of $7,500 in recognition for its efforts in this case and in attaining the Settlement. (*Id.* § 8.3.)

      **F.**     **Release of Liability:** In exchange for the monetary and prospective relief described above, each "Settlement Class Member" will be deemed to have released and forever discharged Defendant and all of its related subsidiaries and affiliates from any past present and

future claims related to the sending of faxes under the TCPA or any similar statute or law. (*Id.* § 3.2.)

## IV. THE COURT SHOULD CERTIFY A CLASS UNDER FEDERAL RULE OF CIVIL PROCEDURE 23 FOR SETTLEMENT PURPOSES ONLY

As part of the approval process, the Court should certify—solely for settlement purposes—a Settlement Class under Rule 23(a) and both Rule 23(b)(2) and Rule 23(b)(3). As this Court is well aware, Rule 23(a) requires that (i) the proposed class is so numerous that joinder of all individual class members is impracticable (numerosity); (ii) that there are common questions of law and fact amongst class members (commonality); (iii) that the proposed representative's claims are typical of those of the class (typicality); and (iv) that both the named-representative and his or her counsel have and will continue to adequately represent the interests of the class (adequacy). Fed. R. Civ. P. 23(a). To certify a class under Rule 23(b)(2), a plaintiff must show that the party opposing certification has acted or failed to act on grounds generally applicable to the class as a whole, "so that final injunctive relief or corresponding declaratory relief is appropriate . . . ." Fed. R. Civ. P. 23(b)(2). For certification under Rule 23(b)(3) there must be questions of law or fact common to the proposed class members that predominate over any questions affecting only individual members, and the class mechanism must be superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

### A. The Settlement Class is Ascertainable.

The first requirement for certification isn't expressly found in Rule 23 itself; rather, courts have long read-in an implicit requirement that the class be ascertainable—defined so that the Court can easily determine who is a class member. A class definition is sufficient if class membership is "defined by objective criteria," *Mullins v. Direct Digital LLC*, 795 F.3d 654, 657 (7th Cir. 2015), which may include a defendant's business records. *See, e.g., Saltzman v. Pella*

7

*Corp.*, 357 F.R.D. 471, 475-76 (N.D. Ill. 2009), *aff'd*, 606 F.3d 391 (7th Cir. 2010).

Membership in the Settlement Class is ascertainable here. As defined in the Settlement, the Class consists of: "all persons in the United States who were successfully sent at least one facsimile advertisement from The Coast Distribution System, Inc. from July 28, 2012 to the date Notice is sent to the Class." (Settlement Agreement § 1.3.) These standards are entirely objective: whether a fax was sent is verifiable from LKQ's own records. Indeed, LKQ has a list of all persons who belong in the class (the "Class List"), which consists of 6,533 unique fax recipients. (*Id.* § 1.6.) As such, identifying Settlement Class members presents no hurdle.

### B. The Proposed Class is Numerous.

Rule 23(a)'s first enumerated requirement—numerosity—is satisfied where "the class is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). There is no specific number required to satisfy numerosity, nor are plaintiffs required to state the exact number of potential class members. *Smith v. Nike Retail Servs.*, *Inc.*, 234 F.R.D. 648, 659 (N.D. Ill. 2006). Generally, "[t]he court is permitted to make common-sense assumptions that support a finding of numerosity." *Maxwell v. Arrow Fin. Servs.*, *LLC*, No. 03-cv-1995, 2004 WL 719278, at *2 (N.D. Ill. 2004).

In this case, and as verified through informal and confirmatory discovery (Woodrow Decl. ¶¶ 10, 11), the Settlement Class consists of 6,533 unique fax recipients. That is obviously more than 40 people and readily satisfies numerosity.

### C. Commonality is also Satisfied.

Next, Rule 23(a) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To meet this commonality requirement, the representative plaintiff must demonstrate that the proposed class members "have suffered the same injury." *Wal-Mart Stores,*

*Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). In other words, commonality requires that the claims of the class "depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Commonality is present where a "common nucleus of operative fact" exists, even if as to one question of law or fact, *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992), and is often found where "defendants have engaged in standardized conduct toward members of the proposed class." *Whitten v. ARS Nat'l Servs. Inc.*, No. 00-cv-6080, 2001 WL 1143238, at *3 (N.D. Ill. Sept. 27, 2001) (internal quotations omitted). Ultimately, commonality is a relatively low and easily surmountable hurdle. *Scholes v. Stone, McGure, & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992).

In this case, Plaintiff's and the members' of the Class claims are based upon the same common contention: that Defendant violated the TCPA and JFPA by sending unsolicited facsimile advertisements that contained improper opt-out language. (Compl. ¶ 16). Defendant sent the faxes systematically and its conduct affected Plaintiff and the members of the Classes in a virtually identical manner (*i.e.*, subjecting them to the aggravation and costs associated with the receipt of such unsolicited facsimile messages). (Compl. ¶¶ 15-18).

As the Seventh Circuit has explained, "[c]lass certification is normal in litigation under § 227, because the main questions, such as whether a given fax is an advertisement, are common to all recipients." *See Holtzman*, 728 F.3d at 684 (citing *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446 (7th Cir. 2005)). This applies squarely to the instant case. LKQ's faxes give rise to several common questions of both law and fact, including: (a) whether the Defendant sent an unsolicited fax advertisements, (b) whether the manner and method the Defendant used to

9

compile or obtain the list of fax numbers to which it sent the faxes and other unsolicited faxed

advertisements procured prior express consent permission or invitation from the recipients to

send the faxes, (c) whether the Defendant sent the faxed advertisements willfully or knowingly

so as to warrant treble damages, and (d) whether the Faxes contained an "opt-out notice" that

complied with the requirements of § (b)(1)(C)(iii) of the Act, and the regulations promulgated

thereunder, and the legal effect of the failure to comply with such requirements. Because the

faxes all said the same thing, these issues are common for across all class members.

LKQ's prior business relationship defense is similarly the same for all class members. In

each instance the key question to resolve in the case is whether a business with a prior

relationship with a second business violates the TCPA by sending faxes to the second business

that do not contain opt-out language required for unsolicited faxes—the issue at the heart of the

currently-pending D.C. Circuit appeal. The answer will be the same for all Settlement Class

Members. Accordingly, the commonality requirement is met as well.

### D. Plaintiff's Claims Are Typical of the Classes' Claims.

Typicality, the next prerequisite under Rule 23, requires that Plaintiff's claims be typical

of those of the other members of the Class. Fed. R. Civ. P. 23(a)(3). The typicality requirement is

closely related to the commonality requirement and is satisfied if a plaintiff's claims arise from

"the same event or practice or course of conduct that gives rise to the claims of other class

members and . . . are based on the same legal theory." *Radmanovich v. Combined Ins. Co. of Am.*,

216 F.R.D. 424, 432 (N.D. Ill. 2003) (internal quotations omitted). Even the existence of factual

differences will not preclude a finding of typicality, as the claims of a named plaintiff need only

share "the same essential characteristics" as those of the class. *Id.* Indeed, "[s]imilarity of legal

theory is more important than factual similarity. . . ." *Id.* (quoting *Harris v. City of Chi.*, Nos. 96-

cv-2406, 96-cv-7526, 1998 WL 59873, at *5 (N.D. Ill. Feb. 9, 1998)).

In this case, Plaintiff and the proposed members of the Class were each subjected to Defendants' common course of conduct. (*See* Compl. ¶ 26). Further, if the opt out language was deficient with respect to the faxes received by Plaintiff then it violated the TCPA to send the same deficient faxes everyone else. Indeed, as a result of Defendant's conduct, Plaintiff and the other members of the Class suffered the same injuries (in the form of the violation of their statutory rights under the TCPA, annoyance in having to deal with the faxes, and loss of the use and enjoyment of their fax machines) and are entitled to an identical calculation of statutory damages per fax. As such, Rule 23(a)(3)'s typicality prerequisite is easily satisfied.

### E. The Adequacy of Representation Requirement is Also Satisfied.

Rule 23(a) finally requires that the representative parties have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This factor requires that both a proposed class representative and his or her counsel have the ability to "zealously represent and advocate on behalf of the class as a whole." *Maxwell*, 2004 WL 719278, at *5. The proposed class representative must not have claims that are "antagonistic or conflicting . . . with other members of the class," and must have a "sufficient interest in the outcome of the case to ensure vigorous advocacy." *Id.* (internal quotations omitted). Additionally, proposed class counsel must be competent and have the resources necessary to sustain the complex litigation necessitated by class claims. *Gomez v. Ill. State Bd. of Educ.*, 117 F.R.D. 394, 401 (N.D. Ill. 1987). It is persuasive that proposed class counsel have been found adequate in prior cases. *Id.*

In this case, Plaintiff has the same interests as the members of the Settlement Class. They each received faxes as a result of Defendant's uniform course of conduct. (Compl. ¶¶ 25-26). As such, Plaintiff suffered the same injury, has the same claims available, and has no interests

antagonistic to those of the Class. *Id.* Plaintiff will fairly and adequately protect the interests of the Class, and Plaintiff's pursuit of this action demonstrates as much. *Id.*

Similarly, proposed class counsel are respected members of the legal community who have substantial experience in class actions of similar size, scope, and complexity to the instant action. (*See* Firm Resumes of Woodrow & Peluso, LLC and Law Offices of Stefan Coleman, P.A., attached hereto as Group Exhibit C.). Counsel are deeply familiar with the TCPA and have regularly engaged in major complex litigation involving the TCPA and consumer technology issues. Counsel also have the resources necessary to conduct and resolve litigation of this nature. Plaintiff and its counsel have and will continue to adequately represent the Class to meet Rule 23(a)(4).

### F. The Proposed Class Satisfies Rule 23(b)(2).

Once the prerequisites of Rule 23(a) are satisfied, one of the three subsections of Rule 23(b) must be satisfied as well. Here, certification of the Settlement Class is warranted under both Rules 23(b)(2) and (b)(3).

Rule 23(b)(2) provides that the party opposing certification must have acted or failed to act on grounds generally applicable to the proposed class, "so that final injunctive relief or corresponding declaratory relief is appropriate. . . ." *Brown v. Yellow Transp.*, *Inc.*, No. 08-cv-5908, 2011 WL 1838741, at *2 (N.D. Ill. 2011) (quoting Fed. R. Civ. P. 23(b)(2)). The requirement that the defendant act on grounds generally applicable to the 23(b)(2) class, like the whole of Rule 23, is to be "liberally construed so as to favor the maintenance of class actions where appropriate." *See Yellow Transp.*, 2011 WL 1838741, at *2; *see also King v. Kansas City Southern Indus.*, 519 F.2d 20, 26 (7th Cir. 1975)). Where a court finds that Rule 23(a) commonality is met, the court should typically also find that the plaintiff has shown that the defendant acted on grounds generally applicable to the class as a whole. *See Lemon v. Intl. Union*

12

*of Operating Eng'rs*, *Loc. No. 139, AFL-CIO*, 216 F.3d 577, 580 (7th Cir. 2000); *Yellow Transp.*, 2011 WL 183871, at \*7.

LKQ acted on grounds generally applicable to the Settlement Class as a whole. Indeed, Defendant sent the same faxes using the same equipment to Plaintiff and the rest of the Class members. Defendant's conduct did not vary from Class member to Class member—the deficient opt-out language is present on every fax—and therefore, certification under Rule 23(b)(2) is appropriate.

### G.    The Proposed Class Also Satisfies Rule 23(b)(3).

Plaintiff also seeks certification of the Class under Rule 23(b)(3), which provides that a class action may be maintained where the questions of law and fact common to members of the class predominate over any questions affecting only individual members, and the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3); *Fletcher v. ZLB Behring LLC*, 245 F.R.D. 328, 331–32 (N.D. Ill. 2006). As discussed below, this case readily meets both of these requirements.

### 1.    Common Questions of Law and Fact Predominate.

Rule 23(b)(3)'s "predominance requirement looks to whether the proposed class is 'sufficiently cohesive' to warrant 'adjudication' by representation." *Williams-Green v. J. Alexander's Rests., Inc.*, 277 F.R.D. 374, 383 (N.D. Ill. 2011) (citing *Wal-Mart*, 131 S. Ct. at 2566). This inquiry requires courts to identify "the substantive issues that will control the outcome, assess[] which issues will predominate, and then determine whether the issues are common to the class." *Id.* (citing *Hyderi v. Wash. Mut. Bank, FA*, 235 F.R.D. 390, 398 (N.D. Ill. 2006)) (internal quotations omitted).

Here, the common questions set forth above are at the heart of this litigation. The claims of

13

every class member hinge on the same common contention: whether the opt-out language in the faxes is sufficient. Moreover, the answer to this question is necessarily subject to common proof, namely the faxes themselves. *See Wal-Mart*, 131 S. Ct. at 2551 (2011) ("What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation."); *Schmidt v. Smith & Wollensky, LLC*, 268 F.R.D. 323, 329 (N.D. Ill. 2010) (holding that the court must determine "whether plaintiffs can, through individualized cases, offer proof on a class-wide basis.").

In short, the common question of whether the opt-out language complied with the Act is at the heart of this litigation and will drive its resolution for everyone. As such, Rule 23(b)(3)'s predominance requirement is satisfied.

> 2. <u>The Class Action Mechanism is Superior to Other Available Methods for the Litigation of this Matter</u>.

Finally, Rule 23(b)(3) requires that the class action mechanism be superior to the other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P 23(b)(3); *Fletcher*, 245 F.R.D. at 334. This proposed class action Settlement is superior to other available methods for adjudicating Plaintiff's and the Class's claims. Indeed, when a settlement is under review the Court generally refrains from determining whether certification will be manageable. *See, e.g., In re Ikon Office Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 178 (E.D. Pa. 2000) (citing *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).

Accordingly, the superiority requirement is also satisfied and the Settlement Class should be certified for settlement purposes. Further, and as discussed next, the terms of the Settlement warrant preliminary approval.

**V.      THE PROPOSED SETTLEMENT SHOULD RECEIVE PRELIMINARY**

**APPROVAL**

Rule 23(e) requires judicial approval of a proposed class action settlement based on a finding that the agreement is "fair, reasonable, and adequate," see Fed. R. Civ. P. 23(e)(2); *Synfuel Techs., Inc. v. DHL Express (USA), Inc*., 463 F.3d 646, 652 (7th Cir. 2006), which involves a well-established two-step process. *Armstrong v. Bd. of Sch. Directors of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980) overruled on other grounds by *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *In re Northfield Labs., Inc. Sec. Litig*., No. 06-cv-1493, 2012 WL 366852, at *5 (N.D. Ill. Jan. 31, 2012). The first step—preliminary approval—assesses whether the proposed settlement falls "within the range of possible approval," see *Armstrong*, 616 F.2d at 314, "to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Id.* Once preliminary approval is granted, class members are notified of the settlement, and the court and parties proceed to the second step—the final fairness determination. *Id*.

 "Federal courts naturally favor the settlement of class action litigation," *In re AT&T Mobility Wireless Data Servs. Sales Litig*., 270 F.R.D. 330, 345 (N.D. Ill. 2010) (*quoting Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) (internal quotations omitted) and use a multi-factor test to determine whether a proposed settlement is fair, reasonable, and adequate. *Synfuel*, 463 F.3d at 653 (citing *Isby*, 75 F.3d at 1199). At the preliminary approval stage, courts in this District consider the following four factors: (1) the strength of the plaintiff's case compared to the amount of the settlement offer, (2) the length, complexity, and expense of further litigation, (3) the opinion of competent counsel, and (4) the stage of the proceedings and amount of discovery completed. *See id.* (citing *Isby*, 75 F.3d at 1199). Although these factors are ultimately assessed at the final fairness hearing, a summary analysis takes place at the preliminary approval stage.

*Kessler v. Am. Resorts Int'l*, No. 05-cv-5944, 2007 WL 4105204, at *5 (N.D. Ill. Nov. 14, 2007) (citing *Armstrong*, 616 F.2d at 314).

The Seventh Circuit has additionally identified "red flags" that may alert courts to an unfair settlement, including: (1) the failure to establish the total class recovery, (2) the reversion of un-awarded attorneys' fees to the defendant, (3) overly complicated claim forms, and (4) coupon-based relief. *Eubank v. Pella Corp.*, 753 F.3d 718, 723 26 (7th Cir. 2014). None of these warning signs are present here, as the Agreement (1) creates a settlement fund of $3,266,500 million, (2) with none of that money reverting to Defendants, and (3) without the need to file any claim form *at all*, every class member (who doesn't opt out) will get cash relief.

### A. The Strength of Plaintiff's Case Compared to the Amount of the Settlement Offer Favors Preliminary Approval.

"The most important factor relevant to the fairness of a class action settlement is the first one listed: the strength of plaintiffs' case on the merits balanced against the amount offered in the settlement." *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 958 (N.D. Ill. 2011) (quoting *Synfuel*, 463 F.3d at 653) (internal quotations omitted). The strength of a plaintiff's case is judged by calculating "the net expected value of continued litigation to the class" and then estimating "the range of possible outcomes and ascrib[ing] a probability to each point on the range." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 CV 2898, 2012 WL 651727, at *2 (N.D. Ill. Feb. 28, 2012) (quoting *Synfuel*, 463 F.3d at 653) (internal quotations omitted); *see also Eubank.*, 753 F.3d at 727 (finding that the district court should "estimate the likely outcome of a trial in order to evaluate the adequacy of the settlement"). It should be kept in mind, however, that "the Seventh Circuit recognizes that a high degree of precision cannot be expected in these calculations" and "[i]nstead courts are to provide a ballpark valuation of the class's claims." *Am. Int'l Grp., Inc.*, 2012 WL 651727, at *2 (internal

quotations omitted). "In considering the strength of plaintiffs' case, legal uncertainties at the time of settlement favor approval." *In re Southwest Airlines Voucher Litig.*, No. 11-cv-8176, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013) (Kennelly, J.). Finally, "[b]ecause the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete recovery. Indeed, the idea of a "complete victory" is illusory where a nine-figure or ten-figure judgment "would most surely bankrupt the prospective judgment debtor." *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 790 (N.D. Ill. 2015).

Applied to the case at bar, a Settlement Fund of $3,266,500 fairly compensates the 6,533 Settlement Class Members here. The Settlement Fund represents a full statutory damage award of $500 for each Settlement Class Member. While certain Settlement Class Members may have received multiple faxes (a total of approximately 77,000 faxes were sent) multiple recoveries are uncalled for under the circumstances.

First, these faxes were arguably not "unsolicited," because many were sent to entities with whom Coast Distribution shared an established business relationship. Indeed many of the fax recipients used the faxes to order products from Coast Distribution. This issue—specifically whether the FCC's precise opt out language is required on faxes sent by businesses with whom there is a prior established relationship—is presently being litigated before the D.C. Circuit. An adverse decision could negatively impact (or delay for years) the class's ability to receive any recovery.

Second, the faxes did actually notify recipients that they could opt out—the violation in this case admittedly stems from the absence of "magic language" in the opt-out provision. This is important. Because Settlement Class Members could have opted out, the fact that many chose not to do raises waiver and estoppel concerns in addition to potential standing arguments.

Accordingly, even if the average recipient was sent multiple faxes, a full statutory award of $500 per fax is inappropriate here because to allow multiple recoveries for all 77,000 faxes would result in a judgment for between $38,500,000 and $115,500,000—all for a highly-technical violation. (Woodrow Decl. ¶ 14.) Again, this is especially the case where, as here, the D.C. Circuit is presently reviewing the legal issues that are central to this case and an adverse decision could impair the Settlement Class's ability to recover any compensation at all.

It should further be recalled that the amount to be recovered by each Settlement Class Member in this case, approximately $300, readily exceeds typical awards in TCPA class action settlements. According to proposed Class Counsel's research the typical TCPA class action settlement results in per claim recoveries of approximately $145.[2] In this Settlement, by contrast, if full attorneys' fees were to be awarded by the Court then every Settlement Class Member would receive an amount nearly double that sum—without needing to file any claim form at all. This per class member recovery plainly suggests that the Settlement reached in this case is fair, reasonable, and adequate.

In short, the fund here of $3,266,500 total—to be paid out completely with no claims process and no reverter—is reasonable given the circumstances. As such, this factor supports preliminary approval.

### B. The Potential Length, Complexity, and Expense of Further Litigation Favor Preliminary Approval.

Further litigation would last months if not years and would potentially result in the Settlement Class Members receiving nothing at all. First, this is an alleged class action. As the Court is well-aware, such cases are inherently complex and require enhanced judicial oversight

---

[2] Plaintiff has compiled a spreadsheet of 25 TCPA class action settlements reached over the past several years. *See* TCPA Settlement Data, a copy of which is attached hereto as Exhibit D.

and involvement. Discovery is often far-reaching and time-consuming. In this case, Stone would need to first succeed in getting the class certified in an adversarial setting. Then, assuming it was able to obtain certification, Stone would need to overcome summary judgment motions from LKQ. During this period of time the D.C. Circuit is likely to rule on the central legal issues in this case, namely whether the FCC's fax opt-out language must also be included on faxes that are sent to businesses with whom the sender has an established business relationship. If the D.C. Circuit were to rule against consumers and decide that opt-out language is not required, the ability of the Class to receive any relief at all in this proceeding would be seriously called into question.

Additionally, no matter what happens in the D.C. Circuit one or more parties is likely to appeal, and the case could ultimately reach the United States Supreme Court. Motions to stay and similar filings would almost certainly be submitted during that time.

Hence, the Settlement provides actual, tangible relief now when further litigation might require that the Settlement Class members wait months or even longer to eventually collect nothing at all. Under the circumstances, this factor plainly supports granting preliminary approval.

### C. The Opinion of Proposed Class Counsel Supports Preliminary Approval.

The opinion of Class Counsel also weighs in favor of granting preliminary approval. This is a very strong settlement. (Woodrow Decl. ¶ 11.) The violation at issue—allegedly faulty opt-out language—is highly technical, and the faxes admittedly *did* inform recipients that they had the ability to opt-out of receiving the faxes (and Coast Distribution honored such opt out requests when they were made). (Woodrow Decl. ¶ 12.) Further, most of the class members had prior business dealings with Coast Distribution, which could result in their claims being undermined

significantly by an adverse decision from the D.C. Circuit. In fact, many of the Settlement Class members reportedly used the faxes in their business dealings with Coast Distribution.

As such, recovery by each Settlement Class Member in the amount of a single fax is eminently reasonable. (Woodrow Decl. ¶ 14.) Indeed, to apply the TCPA in this case as allowing for recoveries for multiple faxes would potentially result in a windfall for Settlement Class Members who appreciated receiving the faxes, used the faxes to order supplies from Coast Distribution, yet due to a technical feature of the TCPA are due thousands of dollars. (*Id.*) Put simply, proposed Class Counsel faced an uphill battle in this case convincing the Court that Defendant's minor technical violation of the statute warranted over $30 million in statutory damages (a result that may implicate due process concerns). (*Id.* ¶ 15.)

The Settlement is particularly strong because it provides relief without requiring Settlement Class Members to even file a claim and none of the Settlement Fund reverts back to the Defendant. (Woodrow Decl. ¶ 16.) Such an "all in" model ensures that some of the toughest common criticisms against class action settlements of this type, including that claims rates are often meager and that class members do not obtain meaningful recoveries, are simply not present here. Put simply, this is a highly favorable Settlement under the circumstances. (*Id.*)

**D.      The Stage of the Proceedings and the Amount of Discovery Completed Support Preliminary Approval.**

Finally, the case was settled at a stage that also militates in support of approval. Counsel for both Parties engaged early on in the case in an exchange of information about the size and scope of the potential class, the strength of Stone's claims, and the nature of prior business dealings between Coast Distribution and other class members. (Woodrow Decl. ¶ 5.) This exchange intensified in the weeks leading up to the mediation where, under Judge Denlow's supervision, additional data was disclosed regarding the scope of the alleged Class and LKQ's

potential defenses. (Woodrow Decl. ¶ 7.)

Moreover, following the negotiation of the Settlement's terms, and consistent with the process outlined at the mediation, the Parties have completed a modest amount of confirmatory discovery, which Class Counsel has used to confirm the accuracy of the information disclosed regarding the size and scope of the Class (and other issues) during the mediation. (Woodrow Decl. ¶ 10.)

As a result, the stage of the proceedings is such that Class Counsel went into the negotiations armed with sufficient information so as to negotiate intelligently. This factor therefore also supports preliminary approval of the Settlement.

## VI. THE PROPOSED METHOD OF NOTICE SHOULD BE APPROVED.

When a class action is settled, due process and Rule 23 require that the court "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1); accord *In re: Sears, Roebuck & Co. Front-loading Washer Prod. Liab. Litig.*, No. 06 C 7023, 2016 WL 772785, at *7 (N.D. Ill. Feb. 29, 2016) (requiring "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort" when approving a settlement of a certified class action) (citation and internal quotations omitted); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (explaining that "[i]ndividual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort"). Notice must be provided in a "reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1); *In re Northfield*, 2012 WL 366852, at *7. The notice must also disclose specific information, in plain language, about the nature of the action and the rights of class members. Fed. R. Civ. P. 23©(2)(B)(i)–(vii); *see In re AT&T*, 270 F.R.D. at 352.

The proposed Notice Plan in this case plainly comports with due process. The Settlement requires the Settlement Administrator to send notice by direct mail to every Settlement Class member advising the class of its rights under the Settlement. (*See* Settlement Agreement, Ex. B; *see also* Notice Forms, attached hereto as Group Ex. E.) Because LKQ allegedly had business relationships with the recipients, it should have accurate contact information. Nevertheless, addresses will be updated by the Settlement Administrator. The Notice Plan also includes a Settlement Website where Class Members can visit, read the traditional "long form" notice and other important settlement documents (including the agreement, preliminary approval order, and Class Counsel's anticipated motion for reasonable attorney's fees), and learn about important Court dates and deadlines. The Settlement Administrator is also responsible for serving notice on State attorneys general as required by the Class Action Fairness Act, 28 U.S.C. § 1715.

In short, the proposed form of notice complies with Rule 23 and due process.

## VII. CONCLUSION

The instant Settlement provides strong relief to the proposed Settlement Class in the form of an "all in" non-reversionary common fund of $3,266,500. Settlement Class Members are not required to file claims, which means that all Settlement Class Members who choose not to exclude themselves will be mailed a cash payment. Under the circumstances the Court should have little trouble finding that the instant Settlement falls within the range of what is fair, reasonable, and adequate, so as to warrant an order granting preliminary approval and directing that notice be issued to the Settlement Class Members as contemplated by the Settlement Agreement.

Dated: January 20, 2017                          Respectfully submitted,

                                                 **Wendell H. Stone Company, Inc. d/b/a Stone & Company**, individually and on behalf of all others similarly situated,

By: /s/ Steven L. Woodrow
One of Plaintiff's Attorneys

Marc McCallister
mem@mccallisterlawgroup.com
McCallister Law Group
120 North LaSalle St., #2800
Chicago, IL 60602
(312) 345-0611

Steven L. Woodrow
swoodrow@woodrowpeluso.com
Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Stefan L. Coleman
Law@StefanColeman.com
LAW OFFICES OF STEFAN COLEMAN, P.A.
201 S. Biscayne Blvd, 28th Floor
Miami, FL 33131
Tel: 877.333.9427
Fax: 888.498.8946

*pro hac vice

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 20, 2017, I served the above and foregoing papers by causing such paper to be filed with the Court using the Court's electronic filing system, which will send copies of such paper to all counsel of record.


/s/ Steven L. Woodrow