**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| WENDELL H. STONE COMPANY, INC. d/b/a STONE & COMPANY, individually and on behalf of all others similarly situated, | Case No. 1:16-cv-07648 |
| Plaintiff, | |
| v. | Hon. Matthew F. Kennelly |
| LKQ CORPORATION, a Delaware corporation | |
| Defendant | |

**MOTION FOR AN AWARD OF REASONABLE ATTORNEYS' FEES
AND FOR REIMBURSEMENT OF COSTS AND FOR THE
<u>CLASS REPRESENTATIVE'S INCENTIVE AWARD</u>**

## TABLE OF CONTENTS

I.     INTRODUCTION........................................................................................1

II.    FACTUAL BACKGROUND AND CASE HISTORY ...................................2

III.   CLASS COUNSEL'S REQUESTED AWARD FOR ATTORNEYS' FEES AND EXPENSES FALLS WITHIN THE MARKET RATE FOR SIMILAR SERVICESIN LIGHT OF THE RISKS FACED IN THE LITIGATION..................5

      A.    A award of one-third of the fund is consistent with the market for TCPA class action settlements ................................................8

      B.    An award of one-third is reasonable is light of the risk faced both before and during the litigation ...............................................9

IV.   THE FEE REQUEST IS ALSO REASONABLE UNDER THE LODESTAR METHOD .........................................................................................12

V.    CLASS COUNSEL'S REQUEST FOR REIMBURSEMENT OF EXPENSES IS REASONABLE AND SHOULD BE APPROVED .......................................16

VI.   AN INCENTIVE AWARD OF $7,500 IS FAIR AND REASONABLE ....................17

VII.  CONCLUSION .........................................................................................17

# TABLE OF AUTHORITIES

## *CASES*

*Americana Art China Co. v. Foxfire Printing and Packaging, Inc.*,
 743 F.3d 243 (7th Cir. 2014) .................................................................6

*Aranda v. Caribbean Cruise Line, Inc.*, 2016 WL 4439935 (N.D. Ill. Aug. 23, 2016)................10

*Beckman v. KeyBank N.A.,* 293 F.R.D. 467 (S.D.N.Y. 2013) ..................................14 n. 7

*Beesley v. Int'l Paper Co.*,  2014 WL 375432 (S.D. Ill. Jan. 31, 2014) .......................16

*Boeing v. Van Gemert*, 444 U.S. 472 (1980) ..............................................16

*Buccellato v. AT&T Operations, Inc.*, 2011 WL 3348055 (N.D. Cal. June 30, 2011)............14 n.7

*Cook v Niedert*, 142 F.3d 1004 (7th Cir. 1998) ...........................................6

*Couch v. Southwest Airlines Co.*, 3:15-cv-00367-N (N.D. Tex. 2016) .........................15

*Davis v. J.P. Morgan Chase & Co.*, 827 F.Supp.2d 172 (W.D.N.Y. 2011) ..........................14 n.7

*Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560 (7th Cir. 1994) .............................6

*Fulton Dental v Bisco*, Case No. 1:15-cv-11038 (N.D. Ill.) ...................................3 n.2

*Hageman v. AT&T Mobility LLC*, 2015 WL 9855925 (D. Mont. Feb. 11, 2015) ..........................9

*Harman v. Lyphomed, Inc.*, 945 F.2d 969 (7th Cir. 1991).......................................12, 14

*In re AT&T Mobility Wireless Data Servs. Tax Litig.*, 792 F. Supp. 2d 1028 (N.D. Ill. 2011).....17

*In re Cardinal Health Inc. Sec. Litig.*, 528 F.Supp.2d 752 (S.D. Ohio 2007) ........................14 n.7

*In re Enron Cor. Sec. Litig.*, 586 F.Supp.2d 732 (S.D. Tex. 2008) .........................14 n.7

*In re Synthroid Mktg. Litig.*, 264 F.3d 712 (7th Cir. 2001) ...................................7

*Ira Holtzman C.P.A. v. Turza*, 728 F.3d 682 (7th Cir. 2013) ...................................10

*In re Navistar Diesel Prod. Liab. Litig.*, 2013 WL 456362 (N.D. Ill. Aug. 11, 2013)................12

*In re Rite Aid Sec. Litig.*, 362 F.Supp.2d 587 (E.D. Pa. 2005) .................................14 n.7

*In re Sw. Airlines Voucher Litig.*, 2013 WL 5497275 (N.D. Ill. Oct. 3, 2013) .............................14

*Kolinek v. Walgreen Co.*, 311 F.R.D. 483 (N.D. Ill. 2015) ................................................... *passim*

*Landsman & Funk P.C. v. Skinder-Strauss Assocs.*, 2016 WL 611441 (3d Cir. Feb. 16, 2016) ....9

*Lees v. Anthem Ins. Co., Inc.*, 2015 WL 3645208 (E.D. Mo. June 10, 2015) ................................9

*New England Carpenters Health Benefit Fund v. First Data Bank, Inc.*,
   2009 WL 2408560 (D. Mass. Aug. 3, 2009) ...............................................................14 n.7

*Schulken v. Wash. Mutual Bank*, 09-cv-02708 (N.D. Cal. 2012) ................................................15

*Schulte v. Fifth Third Bank*, 805 F. Supp. 2d. 560 (N.D. Ill. 2011)..............................................7

*Sewell v. Bovis Lend Lease, Inc.*, 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012)..................14 n.7

*Silverman v. Motorola Sols., Inc.*, 739 F.3d 956 (7th Cir. 2013)...................................................7

*Skelton v. Gen. Motors Corp.,* 860 F.2d 250 (7th Cir. 1988) .........................................................6

*Spano v. Boeing Co.*, 2016 WL 3791123 (S.D. Ill. Mar. 31, 2016)............................................17

*Spine & Sports Chiropractic v. ZirMed, Inc.*, 2015 WL 9413143 (W.D. Ky. Dec. 22, 2015)........9

*Spokeo v. Robins*, 136 S.Ct. 1540 (2016) .................................................................................10

*Sutton v. Bernard*, 504 F.3d 688 (7th Cir. 2007) .........................................................................6

*Steiner v. Am. B'casting Co., Inc.*, 248 Fed.Appx. 780 (9th Cir. 2007) .................................14 n.7

*Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200 (C.D. Cal. 2014)...................................9

*Wigod v. Wells Fargo Bank N.A.*, 1:10-cv-2348 (N.D. Ill. 2014)................................................15

*Williams v. Rohm & Hass Pension Plan*, 658 F.3d 629 (7th Cir. 2011).........................................7

**STATUTES, RULES, AND REGULATIONS**

Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*.............................................. *passim*

I.      **Introduction**

This case presents an alleged class action under the Telephone Consumer Protection Act

("TCPA"), as amended by the Junk Fax Prevention Act of 2005, 47 USC § 227, *et seq*. ("JFPA"

or the "Act"), challenging certain facsimiles sent by Defendant LKQ Corporation ("LKQ" or

"Defendant"). LKQ and Plaintiff Wendell H. Stone Company, Inc. d/b/a Stone & Company

("Stone" or "Plaintiff"), following a formal mediation overseen by Magistrate Judge Morton

Denlow (Ret.) of JAMS in Chicago, reached an agreement on the terms of a class action

settlement ("Settlement" or "Agreement") that provides meaningful relief to the Settlement Class

Members.

The strength of the Settlement, which received preliminary approval on January 25, 2017,

cannot be seriously disputed. Defendant LKQ has agreed to establish a Settlement Fund of

$3,266,500 to pay cash awards to Settlement Class Members and other relief. There is **no claims**

**process**—all 6,533 Settlement Class Members who remain in the Settlement (*i.e.*, who do not

file any request to be excluded) will receive an equal cash payment from the Settlement Fund.

There is also **no reverter**: any monies that remain in the Settlement Fund due to uncashed

checks (of which there should be few) will be directed to two *cy pres* recipients.[1] To date, only 6

Settlement Class Members have excluded themselves and none have objected.

At issue presently is Class Counsel's Motion for an Award of Reasonable Attorneys'

Fees and for Reimbursement of Costs. The Settlement Agreement provides that LKQ will not

object to an award seeking up to one-third of the fund as attorneys' fees and expenses.

---

[1] As set forth in Plaintiff's Motion for Preliminary Approval, if the Court ultimately awards amounts from the Settlement as contemplated by the Agreement, then the Settlement Class Members will receive checks for approximately $330—a per claim amount that nearly doubles the amount typically awarded in TCPA class action settlements. This is in addition to the Settlement's prospective relief that brings LKQ's faxes into compliance with the TCPA and attendant regulations.

(Settlement Agreement § 8.1.) The Court is of course still tasked with determining the propriety of any request.

As explained below, Class Counsel seeks an award of reasonable attorneys' fees and expenses equal to one-third of the settlement fund (after deducting the costs of notice and administrative expenses, which are not considered benefits to the Class in this Circuit). Such an amount is reasonable under either a percentage of the recovery analysis or when using Class Counsel's lodestar. Likewise, the Court should approve Class Counsel's request for a reimbursement of expenses and for an incentive award for the Class Representative of $7,500.

## II. Factual Background and Case History

### *The Coast Distribution System's Faxes to Stone and Others*

Defendant LKQ is the successor in interest, by way of a merger, of a company known as The Coast Distribution System, Inc. ("Coast Distribution"). Coast Distribution was a supplier to recreational vehicle, towing, and outdoor power equipment retailers. (Compl. ¶¶ 2-4 (Dkt. 1.)) In its effort to sell its equipment products, Defendant conducted a wide marketing campaign that featured the sending of facsimile messages to businesses, allegedly without prior express permission or invitation. (Compl. ¶¶ 7, 12.) Critical to this lawsuit, the facsimiles failed display proper opt-out language as required by 47 C.F.R. § 64.1200, *et seq*. (Compl. ¶ 19.)

LKQ sent three faxes to Stone in June and October 2015 allegedly without permission or prior dealings. (Compl. ¶ 12.) Before the lawsuit was ever filed, Settlement Class Counsel performed a thorough review into Coast Distribution, LKQ, and the faxes at issue. This included researching the current state of the law (as it existed at that time) with respect to faxes and the requirement of compliant opt-out language, as well as researching facts regarding LKQ's merger with Coast Distribution (and the legal ramifications to ensure we named the appropriate parties), the Plaintiff's prior relationship with Coast Distribution, and the Plaintiff's receipt of faxes.

2

Class Counsel then proceeded to draft the pleadings and, on July 28, 2016, Stone filed its Complaint alleging that the faxes violated the TCPA. (Dkt. 1.) Given that the opt-out language on the faxes was deficient and that the faxes appeared to be sent using a template, Stone sought relief both individually and on behalf of an alleged class.

### LKQ Appears in the Case, and the Parties Exchange Information Informally

Plaintiff obtained service on LKQ and, on September 9, 2016, LKQ formally appeared in the case. (Dkt. 4.) So as to safeguard the class against any attempt to "moot" the case through a Rule 67 or 68 offer, proposed Class Counsel also filed a placeholder Motion for Class Certification. (Dkt. 12.)[2]

From an early point in the proceedings counsel for LKQ and the alleged class engaged in frank and open discussions regarding each side's positions in the lawsuit. (Declaration of Steven L. Woodrow, "Woodrow Decl.", attached hereto Ex. A, ¶ 10.) These talks helped facilitate an open dialogue through which information central to the case—including information about the size of the alleged class and Coast Distribution's sending of the faxes and potential prior relationships with Plaintiff and other class members—was ultimately disclosed without the need for formal discovery. (*Id.* ¶ 6.) Equipped with this information, Stone was prepared to intelligently discuss a fair resolution of the matter.

### The Parties Engage in Mediation with the Honorable Morton J. Denlow (Ret.) of JAMS in Chicago

Following the initial exchange and review of information regarding the claims and

---

[2] The placeholder motion was filed in direct response to Judge Chang's decision in *Fulton Dental v. Bisco*, No. 1:15-cv- 11038 (N.D. Ill.) (stating that there is "wide disagreement on the applicability of Rule 67 to proposed class actions like this one" and finding claim moot where no placeholder motion for certification had been filed.) This Court denied the placeholder motion as "moot" in light of the settlement on January 25, 2017. (Dkt. 26.)

potential for class certification, the Parties agreed to engage in an early mediation with the Honorable Morton J. Denlow (Ret.) of JAMS in Chicago. (Woodrow Decl. ¶ 8.) Through this process the Parties exchanged mediation briefs and additional information about the size of the class and the nature of Coast Distribution's prior business dealings with several of the class members. (*Id.* ¶ 9.) This was relevant given the D.C. Circuit's present review of the FCC's 2015 TCPA Order, including the Commission's ability to require opt-out language on faxes sent by persons who have prior business relationships with fax recipients. (*Id.* ¶ 18.)

Ultimately, and with Judge Denlow's substantial assistance, the Parties were able to reach an agreement in principle with respect to the Settlement's key terms, which are set forth in Section III, below. (Woodrow Decl. ¶ 11.) Only after an agreement was reached with respect to the relief to be made available to the Settlement Class did the Parties discuss reasonable attorneys' fees and incentive awards. (*Id.*) The Parties left the mediation with a signed term sheet and worked together in the weeks following the mediation to efficiently draft formal settlement documents and have them executed. (*Id.* ¶ 12.)

### The Parties Work to Obtain Preliminary Approval & Notice Is Issued to the Class

Once the finer details of the Settlement Agreement and the notices were finalized and the agreement was executed, Class Counsel drafted the papers in support of Preliminary Approval and traveled to Chicago for the Preliminary Approval Hearing held January 25, 2017. During the hearing the Court indicated that the Settlement would receive preliminary approval. (Dkt. 26.) Thereafter, the Parties worked cooperatively with the Settlement Administrator to finalize the Settlement Website and the Class Notices and to mail them out to Settlement Class Members.

Class Counsel's law firm has received several calls from Settlement Class Members seeking additional information about the nature of the claims and the relief made available under

the settlement agreement. (*Id.* ¶ 15.) Most are surprised to learn that federal law includes such a claim. (*Id.*) To date, only 6 Settlement Class Members have elected to opt out and none have objected, signaling overwhelming satisfaction with the results. (*Id*. ¶ 16.)

Going forward, Class Counsel remains committed to ensuring that the Settlement is seen through to completion. This means addressing any issues surrounding the delivery and receipt of over 6,500 settlement checks and issues that invariably result with persons who have difficulty either receiving or cashing their payments. It also requires Class Counsel to work with LKQ's attorneys to select any *cy pres* recipients (subject to the Court's approval) to receive any funds left over from checks that are not cashed on time. Finally, the Settlement also contemplates the completion of certain confirmatory discovery to ensure that the facts and figures provided through the party's informal exchange are verified, and Class Counsel continues to complete such work. (*Id*. ¶ 18.)

Put simply, Class Counsel performed meaningful work identifying the claims, investigating the facts, drafting and filing the pleadings, engaging in an early exchange of information, participating in the mediation, preparing the settlement documents and approval papers, and performing other important legal tasks on behalf of the Class. And the work isn't done. Rather, Class Counsel remains committed to seeing this Settlement Agreement through confirmatory discovery and onto to final approval.

As such, and as explained further below, the Court should award reasonable attorneys' fees and costs equal to one-third of the Settlement Fund (after subtracting the costs for notice and administration).

III. **Class Counsel's Requested Award for Attorneys' Fee and Expenses Falls Within the Market Rate for Similar Services in Light of the Risks Faced in the Litigation.**

Rule 23 provides that "[i]n a certified class action, the court may award reasonable attorney's fees...that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).[3] This is a "common fund" settlement (Settlement § 2.1), meaning that because the defendant is paying a specific sum in exchange for release of liability as to all plaintiffs, the Court may equitably "determine[ ] the amount of attorney's fees that plaintiffs' counsel may recover" from the fund "based on the notion that not one plaintiff, but all those who have benefitted from litigation should share its costs." *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 563 (7th Cir. 1994) (internal citation and quotation marks omitted). When determining whether a requested fee award is reasonable, a court "must balance the competing goals of fairly compensating attorneys for their services rendered on behalf of the class and of protecting the interests of the class members in the fund." *Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 258 (7th Cir. 1988).

In the Seventh Circuit, district courts have the discretion to apply either the "percentage of the fund" or the "lodestar" method in awarding fees in a class action where a common settlement fund is created. *See Americana Art China, Co., Inc. v. Foxfire Printing and Packaging, Inc*., 743 F.3d 243, 247 (7th Cir. 2014). As this Court has previously explained, "one common method of choosing between the percentage and lodestar approaches is to look to the calculation method most commonly used in the marketplace at the time such a negotiation would have occurred." *Kolinek v. Walgreen Co*., 311 F.R.D. 483, 500–01 (N.D. Ill. 2015), *appeal dismissed* (Jan. 27, 2016), *appeal dismissed* (Feb. 1, 2016), *appeal dismissed* (Feb. 3, 2016) (*citing Cook v. Niedert*, 142 F.3d 1004, 1013 (7th Cir. 1998)); *see also Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007) (internal quotations omitted) ("district courts [are to] do their best

---

[3] The attorneys' fees here are authorized by the Parties' agreement. Again, while LKQ agreed not to object to a fee request seeking up to one-third of the common fund, both Parties understood that the Court must independently review the reasonableness of the fees.

to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time."); *see also In re Synthroid Mktg. Litig.*, 264 F.3d 712, 719 (7th Cir. 2001) ("Synthroid I") (cautioning that "any method other than looking to prevailing market rates assures random and potentially perverse results"); *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 635 (7th Cir. 2011) ("When attorneys' fees are deducted from class damages, the district court must try to assign fees that mimic a hypothetical ex ante bargain between the class and its attorneys."). Put simply, "the object is to simulate the market where a direct market determination is infeasible." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 597 (N.D. Ill. 2011) (*quoting In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992)).

As this Court has also explained previously, "[T]he normal practice in consumer class actions is to negotiate a fee arrangement based on a percentage of the plaintiffs' ultimate recovery." *Kolinek*, 311 F.R.D. at 501; *see also Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 957 (7th Cir. 2013) ("Determining the market rate involves securing for the attorney what he would otherwise have bargained for in an arm's length negotiation at the outset of the litigation.") "This is so because fee arrangements based on the lodestar method require plaintiffs to monitor counsel and ensure that counsel are working efficiently on an hourly basis, something a class of nine million lightly-injured plaintiffs likely would not be interested in doing." *Kolinek*, 311 F.R.D. at 501. In common fund settlements like the instant one, courts determine reasonableness by "award[ing] counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d at 718.

As explained below, the Court should calculate a fee using the percentage method, and simulating market conditions here demonstrates that an award of one-third is consistent with the market generally for TCPA class action settlements. Furthermore, the award is reasonable here in light of the risks faced in the litigation.

### A.    An award of one-third of the fund is consistent with the market for TCPA class action settlements.

One-third of the fund (after subtracting administrative expenses) is consistent with the market rate *ex ante*. As the Court aptly explained in Walgreens, when awarding 36% of a common fund settlement as attorneys' fees:

> [A] thirty percent fee award is not unusual in the Seventh Circuit in common fund cases in which recovery is less than $10 million. *See, e.g.*, *Taubenfeld*, 415 F.3d at 598–600 (holding that district court was within its discretion in awarding lead counsel 30% of a $7.25 million settlement fund); *In re Cont'l Ill. Sec. Litig.*, 962 F.2d at 572 (explaining that in class actions, "the usual range for contingent fees is between 33 and 50 percent"); *Bridgeview Health Care Ctr., Ltd. v. Jerryclark*, No. 09 C 5601, 2015 WL 4498741, at *2 (N.D.Ill. July 23, 2015) (awarding one-third of common fund in TCPA class action); *Saf–T–Gard Int'l, Inc. v. Seiko Corp. of Am.*, No. 09 C 0776 (N.D. Ill. Jan. 14, 2011) (awarding one-third of common fund in multimillion dollar TCPA class action). And even though common fund cases in which plaintiffs recover more than $10 million are not perfectly analogous, the fact that courts in this circuit regularly allow attorneys to recoup one-third of the first $10 million of the class action settlement fund is, at the very least, instructive. *See, e.g.*, *Synthroid 2*, 325 F.3d at 980 ("We...give consumer class counsel 30% of the first $10 million...."); *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11 C 4462, 2015 WL 1399367, at *4 (N.D.Ill. Mar. 23, 2015) (awarding plaintiffs' counsel a sliding scale contingency fee including thirty percent of the first ten million dollars of the settlement); *In re Capital One*, 80 F.Supp.3d at 804–05 (finding that before considering possible risk adjustments, 30% is the reasonable base market rate for the first $10 million of recovery); *Wilkins*, 2015 WL 890566, at *10 (same).

*Kolinek*, 311 F.R.D. at 501-02.

An award of one-third is just above 30%, and as the authorities cited by the Court in *Kolinek* and additional cases demonstrate, it falls squarely within the market range for TCPA class action settlements. Indeed, attorneys who secure settlement funds in TCPA class actions are

routinely awarded one-third (33.33%). *See, e.g., Landsman & Funk, P.C. v. Skinder-Strauss Associates*, No. 15-2485, 2016 WL 611441, at *3 (3d Cir. Feb. 16, 2016) (unpublished decision) (affirming award of one-third of reversionary settlement fund in TCPA class action settlement where requested fees were twice the amount of class counsel's lodestar); *Hageman v. AT & T Mobility LLC*, No. CV 13-50-BLG-RWA, 2015 WL 9855925, at *4 (D. Mont. Feb. 11, 2015) (approving fee award of "$15 million, or one-third of the common fund recovery" in TCPA class action settlement against AT&T); *Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) ("Accordingly, the Court awards attorney's fees and costs in the amount of $1.1 million, or 33% of the $3.3 million settlement fund ceiling amount."); *Lees v. Anthem Ins. Companies Inc.*, No. 4:13CV1411 SNLJ, 2015 WL 3645208, at *4 (E.D. Mo. June 10, 2015) (Approving fees in TCPA settlement representing "34% of the actual fund available to Class Members."); *Spine & Sports Chiropractic, Inc. v. ZirMed, Inc.*, No. 3:13-CV-00489, 2015 WL 9413143, at *1 (W.D. Ky. Dec. 22, 2015) (approving one-third of fund as attorney's fees).

Put simply, one-third of the settlement fund falls within the market rate. And given the absence of any unusual circumstances, there is little reason for finding that it inadequately replicates the market pre-suit.[4] Indeed, as explained below, the risks faced both before and during in the case support the award as well.

> **B.    An award of one-third is reasonable in light of the risks faced both before and during the litigation.**

The requested award is further reasonable in light of the risks faced at the outset, and during, the litigation. There was no guarantee of any recovery prior to the case being filed. Although there is some favorable law in this Circuit with respect to the need for faxes to contain

---

[4] Indeed, Plaintiff's retainer agreement, which can produced to the Court upon request, indicates that Plaintiff's Counsel's fees are contingent and will only be sought as a result of any settlement with the Defendant or by virtue of any judgment. (Woodrow Decl. ¶ 18.)

opt out language, (*see Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013) ("Because Top of Mind omitted opt-out notices, it does not matter which recipients consented or had an established business relation with Turza")), Plaintiff still faced substantial hurdles. First, unlike the faxes in *Turza*, the faxes here contained at least *some* opt out language, albeit allegedly deficient under the TCPA. This presented enhanced risk in light of the Supreme Court's decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549, 194 L. Ed. 2d 635 (2016), *as revised* (May 24, 2016). The instant case was filed in July 2016 (prior to this Court's decision in *Aranda v. Caribbean Cruise Line, Inc.*, No. 12 C 4069, 2016 WL 4439935, at *6 (N.D. Ill. Aug. 23, 2016) finding concrete harm for alleged violations of the TCPA post-*Spokeo*)). And although courts have found standing generally for violations alleging unwanted autodialed calls, there is somewhat less authority affirming the presence of concrete harm for what are fairly described as more technical violations of the FCC's opt out rules. Plaintiff's faced the risk of such arguments early on and they would have undoubtedly been raised during briefing on class certification.

Second, the provision under which Plaintiff brings the case is under attack. The D.C. Circuit is presently reviewing a consolidated appeal regarding the FCC's 2015 Order finding that companies that have established business relationships with each other must still include compliant opt-out notices on their faxes. *ACA Int'l v. FCC*, No. 15-1211 (D.C. Cir. filed Sept. 21, 2015). While an adverse decision wouldn't bind this Court it certainly wouldn't help Plaintiff's chances. Further, a decision by the D.C. Circuit striking § 64.1200(a)(4)(iv) would make class certification difficult in this case because it would eliminate any TCPA violation for much of the class.

Third, and relevant both from the start and persisting throughout the case, is the fact that even if the type of violation is upheld and is sufficient to confer Article III standing, the legal

claim at issue—incomplete opt-out language on faxes between businesses that have a prior relationship—is less egregious a misstep under the TCPA than, say, a robo-dialer who purchases lists of phone numbers and spams tens of thousands of strangers with telemarketing calls every day. From a realistic standpoint, a fact-finder might hesitate to award significant damages, particularly where the plaintiff made no attempt to opt out and had an established business relationship with the sender of the faxes.

Fourth and finally, LKQ could have elected to go to the FCC and requested a waiver for several years worth of violations, significantly limiting the class's recovery. If the D.C. Circuit upheld § 64.1200(a)(4)(iv), LKQ would likely have asked the Commission to insulate Coast from liability for solicited faxes sent prior to May 1, 2015 with deficient opt-out notices. The Commission has regularly granted these waivers since October 2014, and Coast is similarly situated to prior petitioners. *See, e.g*., Matter of Rules & Regulations Implementing the TCPA, 30 F.C.C. Red. 8598 at 8602 (Aug. 28, 2015). Indeed, the Commission has continued to regularly issue retroactive waivers to similarly situated fax senders since its original order (none of which extend the immunity period past 4/30/15). Such a waiver would have drastically reduced the putative class size, as 75% of the faxes within the limitations period were sent before May 1, 2015. Hence, this wasn't a case where discerning damages would have merely required multiplying the number of faxes sent by the amount awarded per fax. Considerations throughout the litigation presented enhanced risks of nonpayment (or of a seriously reduced recovery).

In short, at the start of the case a settlement class member would have readily agreed to pay legal fees out of the proceeds of any recovery as opposed to paying out of pocket. An award of one-third is consistent with the market rate for these types of settlements overall, and its appropriate here given the risks involved in the case. This is a particularly strong settlement that

provides a nearly complete victory for the receipt of at least one fax. Prior to the case ever being filed, a settlement class member acting rationally would have agreed to a contingency fee of 33% or even higher, as it still results in attaining several hundred dollars, all due to the receipt of faxes from a familiar business that had *some* opt out language, albeit allegedly defective. Further, no class members are required to file claims to receive payments—again, unlike settlements where "doing nothing" results in the class member releasing their claims without any compensation (which requires the extra step of filing a claim) in the instant settlement doing nothing results in checks being automatically sent to settlement class members. As such, there are not barriers to recovery that, had class members known of them in advance, would have lead them to negotiate a different type of pay structure for their lawyers, particularly a lodestar method that would "require plaintiffs to monitor counsel and ensure that counsel are working efficiently on an hourly basis, something a class of" 6,553 "lightly-injured plaintiffs likely would not be interested in doing." *See Kolinek*, 311 F.R.D. at 501.

One-third is the market rate and it is reasonable given the risks here. As such, Class Counsel and the Class Representative respectfully request that it be awarded in this case.

**IV.    The Fee Request is Also Reasonable Under the Lodestar Method.**

As explained above the Court has discretion as to whether it should use the percentage method versus the lodestar method, "which involves multiplying a reasonable hourly rate by the number of hours reasonably expended...." *In re Navistar Diesel Engine Prod. Liab. Litig.*, No. 11 C 2496, 2013 WL 4556362, at *1 (N.D. Ill. Aug. 11, 2013) (citing *Harman v. Lyphomed, Inc.,* 945 F.2d 969, 975 (7th Cir.1991)).[5] While Class Counsel believe that the percentage method

---

[5] Again, Class Counsel believes the percentage method better approximates the market in this case. The lodestar method is preferred where precise value of the settlement is difficult to determine, *see e.g. In re Navistar Diesel Engine Prod. Liab. Litig.*, No. 11 C 2496, 2013 WL 4556362, at *1 (N.D. Ill. Aug. 11, 2013) (citing *See In re Rite Aid Corp. Sec. Litig.,* 396 F.3d

more appropriately accounts for the risks faced in the case, for the sake of presenting a complete record Class Counsel alternatively submit their lodestar in support of their fee request as well.

As shown in the chart below, Class Counsel expended over 505 hours investigating the claims, litigating the case and negotiating the Settlement Agreement for a current lodestar of $207,950 (in addition to $10,867.24 in current out of pocket expenses).[6] Broken down by each lawyer who worked on the case, the hours spent per attorney and the law clerks are as follows:

| Attorney Name/Firm | Position | Rate | Hours | Lodestar |
|---|---|---|---|---|
| Steven Woodrow/ Woodrow & Peluso | Partner | $440 | 205.9 | $90,596 |
| Patrick Peluso/ Woodrow & Peluso | Partner | $340 | 159.6 | $54,264 |
| Stefan Coleman/ Law Office of Stefan Coleman | Partner | $450 | 140.2 | $63,090 |
| **INITIAL LODESTAR** | | | | $207,950 |

(Woodrow Decl. ¶ 17.) The time spent is reasonable given the work that was needed to investigate the claims, draft all pleadings, discovery and motions, research pertinent legal issues (including issues like the effect of LKQ's merger with Coast, developments regarding the law of constitutional standing, and the impact of the pending D.C. Circuit appeal) and engage in the mediation process. The time spent additionally includes work and research performed related to

---

294, 300 (3d Cir. 2005)), but here the exact value of the Settlement (or at least a minimum value) is easy to calculate ($3,266,500 - $25,840 (costs of notice) = $3,240,660 (minimum value)).

[6] Class Counsel's time records can be emailed or otherwise delivered to the Court upon request. Likewise, a copy of this Motion for Attorney's Fees is being posted to the Settlement Website. The page containing a link to download this Motion will also indicate that Settlement Class Members can obtain copies of Class Counsel's billing records by emailing class counsel at swoodrow@woodrowpeluso.com, by calling (720) 213-0675, or by faxing a request to (303) 927-0809. All requests received prior to the final fairness hearing set for May 2, 2017 will be complied with promptly.

this Motion for Attorneys' Fees.

At this point, the firms appointed as Settlement Class Counsel estimate that approximately $10,000 of additional attorneys' time will be required to finalize the Settlement, including preparing all final documents, concluding confirmatory discovery, and shepherding Settlement Class Members through the claims process. (Woodrow Decl. ¶ 18.) As such, Class Counsel projects that the final lodestar will likely equal $217,950. This is in addition to Class Counsel's current expenses of $10,867.24 , *see* Sec. V, *infra*, for a total of $228,817.24.

With a total lodestar of $228,817.24, a multiplier of 4.72 is needed to justify the requested fees of one-third the Settlement Fund less notice and administrative costs ($3,266,500 (Fund) - $25,840 (Notice Costs) x .33333 =$1,080,209.20 (Requested Award); $1,080,209.20/ $228,817.24 (Lodestar) = 4.72). This is reasonable when measured against other settlements. *See In re Sw. Airlines Voucher Litig.*, No. 11 C 8176, 2013 WL 5497275, at *3 (N.D. Ill. Oct. 3, 2013), *amended,* No. 11 C 8176, 2014 WL 2809016 (N.D. Ill. June 20, 2014), *aff'd,* 799 F.3d 701 (7th Cir. 2015), and *aff'd,* 799 F.3d 701 (7th Cir. 2015) (quoting *Harman v. Lyphomed, Inc.,* 945 F.2d 969, 975 (7th Cir. 1991) ("Multipliers anywhere between one and four have been approved.")).[7] Indeed, while its true that the case was settled early on, Class Counsel was

---

[7] Outside the Seventh Circuit, "[c]ourts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481–82 (S.D.N.Y. 2013) (*citing Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1052–54 (9th Cir. 2002) (listing nationwide class action settlements where multiplier ranged up to 8.5 times)); *Sewell v. Bovis Lend Lease, Inc.*, No. 09 CIV. 6548 RLE, 2012 WL 1320124, at *13 (S.D.N.Y. Apr. 16, 2012) ("Courts routinely award lodestar multipliers between two to six."); *see, e.g., Steiner v. Am. B'casting Co., Inc.,* 248 Fed.Appx. 780, 783 (9th Cir. 2007) (multiplier of 6.85 "falls well within the range of multipliers that courts have allowed"); *Davis v. J.P. Morgan Chase & Co.,* 827 F.Supp.2d 172, 184–86 (W.D.N.Y. 2011) (awarding multiplier of 5.3 in wage and hour class action); *Buccellato v. AT & T Operations, Inc.,* No. 10 Civ. 463, 2011 WL 3348055, at *2 (N.D. Cal. Jun. 30, 2011) (awarding multiplier of 4.3 in wage and hour class action); *New England Carpenters Health Benefits Fund v. First Databank, Inc.,* No. 05 Civ. 11148, 2009 WL 2408560, at *2 (D. Mass. Aug. 3, 2009) (awarding multiplier of 8.3); *In re Enron Corp. Sec., Derivative & ERISA Litig.,* 586 F.Supp.2d 732, 803 (S.D. Tex. 2008)

instrumental in researching and initiating the claims and pursuing the case through to its conclusion. This process included a formal mediation as well as informal and confirmatory discovery. Class Counsel shouldn't be penalized simply because they were able to achieve strong results without the need for formal depositions and other filings. To reduce the requested fees based on the lodestar would provide an incentive to practitioners to perform more "make work" on their cases so as to justify a higher fee. As this Court aptly explained in *Kolinek*:

> The mere fact that this case settled before the parties engaged in full-scale formal discovery and summary judgment motion practice does not detract from class counsel's significant participation in this litigation and the effort they put in to secure a victory for the class. Class counsel did not join this case at the eleventh hour; rather, they saw this case through from start (the filing of the suit) to finish (negotiating a valuable settlement), and they did so with the care and skill commensurate with their significant experience as lead counsel in other major class action litigations.

311 F.R.D. at 502. The same is true here. Class Counsel performed valuable work and efficiently obtained a favorable settlement. They did not join the case at the "eleventh hour"; rather, they saw it through from the start. Furthermore, they have obtained sufficient information to settle through both informal and confirmatory discovery.

 Class Counsel's rates are also reasonable. As set forth in their respective declarations, Class Counsel's rates are comparable to those charged to private clients and have been approved by various courts. (*See* Woodrow Decl. ¶ 19.) (citing *Couch v. Southwest Airlines Co.*, 3:15-cv-00367-N (N.D. TX 2016) (*Couch* Dkt. 43) (approving 2016's rates for Woodrow & Peluso of $430 and $330 respectively); *see also Wigod v. Wells Fargo Bank, N.A.*, Case No: 1:10-cv-2348 (N.D. Ill. 2014) (Bucklo, J.) (Wigod Dkt. 278)) (approving hourly rate of $570 for attorney Woodrow in 2014); *see also Schulken v. Washington Mutual Bank*, No. 09-CV-02708-LHK

---

(awarding multiplier of 5.2); *In re Cardinal Health Inc. Sec. Litig.,* 528 F.Supp.2d 752, 768 (S.D. Ohio 2007) (awarding multiplier of six); *In re Rite Aid Sec. Litig.,* 362 F.Supp.2d 587 (E.D. Pa. 2005) (awarding multiplier of seven).

15

(N.D. Cal. 2012) (*Schulken* Dkt. 223) (Koh J.) (approving attorney Woodrow's former hourly rate of $500 back in 2012)).[8]

Likewise, this Court has previously awarded Mr. Coleman a rate of $450. *See Kolinek*, Case No. 1:13-cv-04806, Dkt. 200.

In short, the requested fees are reasonable under the lodestar approach as well, as Class Counsel's lodestar of $228,817.24 requires only a multiplier of 4.72 to support the award.

## V.     Class Counsel's Request for Reimbursement of Expenses is Reasonable and Should be Approved.

It is well settled that counsel who create a common fund like this one are entitled to the reimbursement of litigation costs and expenses, which includes such things as expert witness costs; computerized research; court reports; travel expense; copy, phone and facsimile expenses and mediation." *Beesley v. Int'l Paper Co*., 3:06-CV-703-DRH-CJP, 2014 WL 375432, *3 (S.D. Ill. Jan. 31, 2014) (citing Fed. R. Civ. P. 23; *Boeing v. Van Gemert*, 444 U.S. 472, 478 (1980)). As set forth in the Woodrow Declaration, Class Counsel incurred certain out-of-pocket expenses during the course of the case. This included filing fees, charges for service of process, costs for travel to and from Chicago for the mediation (in addition to the costs of the mediation) the costs of travel for the preliminary approval hearing, and related expenses. (Woodrow Decl. ¶ 20.)

Having review the expenses, Class Counsel submits that they are necessary and reasonable and were incurred as a result of the demands imposed by the litigation. (*Id*.) None of the expenses are for lavish accommodations or for unnecessary items. (*Id*.) Class Counsel expended these items without any guarantee of payment. As such, the Court should approve the requested expenses of $10,867.24 .

---

[8] Mr. Woodrow joined with Mr. Peluso to start their own practice in 2015 and, in the process, Mr. Woodrow lowered his hourly rates out of recognition that smaller firms generally command lower billable rates.

**VI.    An Incentive Award of $7,500 is Fair and Reasonable.**

Courts regularly approve incentive awards in common fund cases like this one that range between $5,000 and $10,000. *See, e.g.*, *In re Capital One*, 80 F.Supp.3d at 809; *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1041 (N.D. Ill. 2011) (collecting cases awarding $5,000); *Kolinek*, 311 F.R.D. at 503 (approving $5,000); *Martin v. Reid*, 818 F.3d 302, 306 (7th Cir. 2016) (affirming approval of settlement agreement with $10,000 incentive award to named plaintiff); *Spano v. Boeing Co.*, No. 06-CV-743-NJR-DGW, 2016 WL 3791123, at *4 (S.D. Ill. Mar. 31, 2016) (approving $10,000 incentive awards for named plaintiffs).

Here, the requested incentive award of $7,500 falls directly at the midpoint of this range. While it is true that Stone did not have to produce a witness for deposition, its facilities manager was directly involved in the gathering of evidence needed to respond to informal discovery requested by LKQ. Stone complied promptly and has stuck by the class from the time prior to filing throughout the course of the suit. As such, a $7,500 incentive award is reasonable and should be approved here.

**VII.    CONCLUSION**

Class Counsel worked diligently to secure a meaningful recovery for the benefit of the Class. $3,266,500 is significant when one considers the nature of the violation, and nearly *all* of the money gets paid out to the Settlement Class given the absence of a claims process. Further, the amount sought, one-third of the Settlement Fund, falls squarely within the range of awards typically approved in TCPA class action settlements and best represents the market *ex ante* given the risks present during all phases of the lawsuit. Finally, to the extent the Court elects to use the lodestar method instead, Class Counsel has invested significant time into the case such that a

multiplier of 4.72 would justify the amount requested. The Court should also award reimbursable expenses of $10,867.24 and an incentive award of $7,500.

WHEREFORE, the Settlement Class Representative, Stone & Co., respectfully requests that this Honorable Court approve Class Counsel's Request for an Award of Reasonable Attorney's Fees and for Reimbursement of Expenses and for the Class Representative's Incentive Award, and for such additional relief as the Court deems necessary, reasonable, and just.

Dated: March 28, 2017

Respectfully submitted,

**Wendell H. Stone Company, Inc. d/b/a Stone & Company**, individually and on behalf of all others similarly situated,

By: /s/ Steven L. Woodrow _____
One of Plaintiff's Attorneys

Marc McCallister
mem@mccallisterlawgroup.com
McCallister Law Group
120 North LaSalle St., #2800
Chicago, IL 60602
(312) 345-0611

Steven L. Woodrow
swoodrow@woodrowpeluso.com
Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Stefan L. Coleman
Law@StefanColeman.com
LAW OFFICES OF STEFAN COLEMAN, P.A.
201 S. Biscayne Blvd, 28th Floor
Miami, FL 33131
Tel: 877.333.9427

Fax: 888.498.8946

*pro hac vice*

19

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on March 28, 2017, I served the above and foregoing papers by causing such paper to be filed with the Court using the Court's electronic filing system, which will send copies of such paper to all counsel of record.

<u>/s/ Steven L. Woodrow</u>