# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| WENDELL H. STONE COMPANY, INC. d/b/a STONE & COMPANY, individually and on behalf of all others similarly situated, | Case No. 1:16-cv-07648 |
| Plaintiff, | Hon. Matthew F. Kennelly |
| v. | |
| LKQ CORPORATION, a Delaware corporation, | |
| Defendant. | |

**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

I.     INTRODUCTION

Plaintiff Wendell H. Stone Company, Inc. d/b/a Stone & Company ("Plaintiff" or "Stone"), by and through its undersigned counsel, in accordance with Federal Rule of Civil Procedure 23, respectfully moves this Court for an order granting final approval to the class action Settlement Agreement[1] reached in this matter (*see* Dkt. 24-1, "Settlement Agreement").

This case presents a class action under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA") challenging certain faxes that Defendant LKQ Corporation ("LKQ" or "Defendant") sent Plaintiff Wendell H. Stone Company, Inc. d/b/a Stone & Company ("Stone" or "Plaintiff") and others. Following a formal mediation overseen by Magistrate Judge Morton Denlow (Ret.), the Parties achieved a class action Settlement that included the following key terms:

- A Settlement Fund of $3,266,500 to pay cash awards;

- There is **no claims process**—the 6,525 Settlement Class Members (6,533 total - 8 who have requested exclusion) who have chosen to remain in the Settlement will split the Settlement Fund (after deducting court costs, notice and administrative costs, the incentive award, and the Fee Award[2]);

- There is no reverter, meaning any monies that remain in the Settlement Fund due to uncashed checks (of which there should be few) will be directed to two *cy pres* recipients.

Ultimately, if the Court awards the Settlement amounts as contemplated by the

---

[1] Unless otherwise specified, capitalized terms have the same meanings as those set forth in the Definitions section of the Settlement Agreement. *See* Dkt. 24-1.

[2] The Settlement Agreement contains a provision indicating that LKQ would not oppose a Fee Award of up to one-third of the Settlement Fund. Both Parties have always understood that the Fee Award is subject to the approval of the Court, and on March 28, 2017 Class Counsel filed their Motion for Attorneys Fees and For Reimbursement of Costs and for the Class Representative's Incentive Award (dkt. 28). No objections have been filed in the case regarding the requested fees or incentive award or otherwise.

Agreement, the Settlement Class Members will receive checks for approximately $330—a per claim amount that easily doubles the amount typically awarded in TCPA class action settlements. Further, the Settlement also features prospective relief designed to bring LKQ's faxes into compliance with the TCPA and applicable regulations (though such regulations may no longer be in effect).

When the strength of such benefits are weighed against LKQ's potential defenses (particularly the fact that the viability of the Class's claims is in serious doubt following the D.C. Circuit's decision overturning in part the FCC's 2006 Solicited Fax Rule, *Bais Yaakov of Spring Valley, et al. v. FCC*, USCA Case No. 14-1234, Doc. # 1668739 (D.C. Cir. Mar. 31, 2017)), it is clear that the instant Settlement provides the Class with relief that is fair, reasonable, and adequate. As such, the Court should grant final approval to the Settlement.

II.    NATURE OF THE LITIGATION AND SETTLEMENT

A brief review of the factual and procedural background of the case follows.

***The Coast Distribution System's Faxes to Stone and Others***

Defendant LKQ merged with The Coast Distribution System, Inc. ("Coast"), a supplier to recreational vehicle, towing, and outdoor power equipment retailers. (Compl. ¶¶ 2-4 (Dkt. 1)). In its effort to market and sell its vehicle and equipment products, LKQ, operating as Coast, conducted a wide scale telemarketing campaign that features the repeated sending of facsimile messages to consumers and businesses, allegedly without prior express permission or invitation. (Compl. ¶¶ 7, 12). Coast's facsimiles also failed to display opt-out language as required (at least at the time this case was filed) by 47 C.F.R. § 64.1200, *et seq*. (Compl. ¶ 19).

LKQ sent three faxes to Stone in June and October 2015 allegedly without permission or prior dealings. (Compl. ¶ 12.) On July 28, 2016, Stone filed its Complaint alleging that the faxes violated the TCPA. (Dkt. 1.) Given that the opt-out language on the faxes was squarely deficient

2

and that the faxes appeared to be sent using a template, Stone sought relief both individually and on behalf of an alleged class.

*LKQ Appears in the Case, and the Parties Exchange Information Informally*

Plaintiff obtained service on LKQ and, on September 9, 2016, LKQ formally appeared in the case through counsel. (Dkt. 4.) So as to safeguard the class against any attempt to "moot" the case through a Rule 67 tender or a 68 offer of judgment, proposed Class Counsel filed a placeholder Motion for Class Certification. (Dkt. 12.)[3]

From an early point in the proceedings counsel for LKQ and the alleged class engaged in frank and open discussions regarding each side's positions in the lawsuit. (Declaration of Steven L. Woodrow, "Woodrow Decl.", attached hereto Ex. A, ¶ 10.) These talks helped facilitate an exchange of information central to the case, including information regarding the size of the class, Coast Distribution's sending of the faxes, and potential prior relationships with Plaintiff and other class members, without the need for formal discovery. (*Id.* ¶ 9.)

With this information, Stone was prepared to negotiate a fair settlement.

*The Parties Engage in Mediation with the Honorable Morton J. Denlow (Ret.) of JAMS in Chicago*

Following the initial exchange and review of information regarding the claims and potential for class certification, the Parties agreed to an early mediation with the Honorable Morton J. Denlow (Ret.) of JAMS in Chicago. (Woodrow Decl. ¶ 9.) The Parties exchanged additional information in anticipation of the mediation about the size of the class and the nature of Coast Distribution's prior business dealings with certain of the class members. (*Id.*) This was

---

[3] The placeholder motion was filed in direct response to Judge Chang's decision in *Fulton Dental v. Bisco*, No. 1:15-cv- 11038 (N.D. Ill.) (stating that there is "wide disagreement on the applicability of Rule 67 to proposed class actions like this one" and finding claim moot where no placeholder motion for certification had been filed.)

3

relevant given the D.C. Circuit's then-pending review of the FCC's Fax Order, including the Commission's ability to require opt-out language on faxes sent by persons who have prior business relationships with fax recipients. (*Id.* ¶ 9.)

Ultimately, and with Magistrate Judge Denlow's substantial assistance, the Parties were able to reach an agreement in principle with respect to the Settlement's key terms, which are set forth in Section III, below. (*Id.* ¶ 11.) Only after an agreement was reached with respect to the relief to be made available to the Settlement Class did the Parties discuss reasonable attorneys' fees and incentive awards. (*Id.*) The Parties left the mediation with a signed term sheet and worked together in the weeks following the mediation to draft formal settlement documents and have them executed. (*Id.* ¶ 12.)

Thereafter, on January 20, 2017, Settlement Class Counsel filed Stone's Motion for Preliminary Approval of Class Action Settlement. (Dkt. 24.) On January 25, 2017 the Court held a hearing on preliminary approval and, for the reasons stated on the record, granted preliminary approval to the Settlement Agreement. (Dkt. 26.)

*Following Preliminary Approval, Class Counsel have assisted Settlement Class Members and have worked to implement and finalize the Settlement*

Since the Court's grant of preliminary approval, Class Counsel and LKQ's attorneys have worked in tandem to implement the Settlement, which has included working to finalize and approve the Settlement Website and notice documents and communicating regularly with the Settlement Administrator (KCC) regarding mailings, opt outs, and re-mailings. (Woodrow Decl. ¶ 15.) Class Counsel have also assisted Settlement Class Members who have contacted their offices with questions regarding the Settlement's terms and process. (*Id.*) Class Counsel have additionally reviewed meaningful confirmatory discovery to ensure that the data previously disclosed regarding the class size was accurately tabulated. (*Id.* ¶ 16.) Further, Class Counsel has

4

had to keep abreast and evaluate the impact of the D.C. Circuit's ruling striking down the FCC's rule that companies must include opt-out language in faxes even where established business relationships exist.

As explained below, only 8 Class Members have opted out and none have objected. Those are remarkable numbers and signal strong support for a settlement where 99.87% of the Settlement Class Members (everyone who hasn't opted out) are entitled to receive payments.

## III. KEY TERMS OF THE SETTLEMENT

For convenience, the core terms of the Settlement are summarized briefly below, and are set forth in full detail in the Settlement Agreement (Dkt. 24-1):

A. **Class Definition:** The "Class" or "Settlement Class" as defined in the Settlement as: all persons in the United States who were successfully sent at least one facsimile advertisement from The Coast Distribution System, Inc. from July 28, 2012 to the date Notice is sent to the Class.

B. **Monetary Relief:** The primary relief made available in this case is a Settlement Fund of $3,266,500 from which all monies due under the Settlement are to be paid. There is no claims process. Checks will be sent to Settlement Class Members who appear on the Class List and who don't request to be excluded. The amount of each payment will be equal to the Class Member's proportionate share of the Settlement Fund after subtracting the costs of Settlement Administration and notice expenses and any incentive award and reasonable attorneys' fees awarded by the Court. If the Court approves all amounts anticipated by the Agreement, it is estimated that the Settlement Class Members will automatically recover approximately $330 each, which more than doubles the typical recovery in TCPA class action settlements. (Woodrow Decl. ¶ 19.) Monies left in the fund as a result of uncashed checks will be paid to two *cy pres* designees to be approved by the Court. (Settlement Agreement § 2.1(c).)

5

      **C.**    **Prospective Relief:** In addition to the cash relief, for a period extending twenty-four (24) months after the Effective Date of the Settlement, LKQ has agreed that to the extent it decides to send commercial faxes that it will, subject to any changes in applicable law, include appropriate opt-out language on such faxes. (*Id.* § 2.2.) Proposed Class Counsel is tasked with reviewing such language to ensure compliance with applicable law. It is highly likely that given the D.C. Circuit's decision regarding the FCC's opt out rules for solicited faxes, LKQ will no longer be required to include opt out language on many of its faxes.

      **D.**    **Payment of Notice and Administration Expenses, Including Notice**: Defendant has agreed to pay from the Settlement Fund all reasonable Settlement Administration Expenses incurred by the Settlement Administrator, Kurtzman Carson Consultants ("KCC") including those related to disseminating the Class notice and processing the opt-outs and objections (there were none), and sending checks. (*Id.* § 1.35.)

      **E.**    **Incentive Award and Reasonable Attorneys' Fees**: Defendant has agreed to not object to an award of attorneys' fees and costs in an amount to be approved by the Court and paid from the Settlement Fund no greater than one-third of the Settlement Fund. Class Counsel agreed to limit their fee request to one-third, and on March 28, 2017 Class Counsel filed a Motion for Fees setting forth the basis for such an award (which hasn't been objected to). (Dkt. 28.) LKQ has also agreed to pay from the Settlement Fund, subject to Court approval, an incentive award to the class representative of $7,500 in recognition for its efforts in this case and in attaining the Settlement. (*Id.* § 8.3.)

      **F.**    **Release of Liability:** In exchange for the monetary and prospective relief described above, each "Settlement Class Member" will be deemed to have released and forever discharged Defendant and all of its related subsidiaries and affiliates from any past present and

6

future claims related to the sending of faxes under the TCPA or any similar statute or law. (*Id.* § 3.2)

As explained below, such terms are decidedly favorable to the Class and the Court should grant preliminary approval to the instant Agreement.

## IV. THE NOTICE PLAN COMPORTS WITH DUE PROCESS

Prior to granting final approval to this Settlement, the Court must first consider whether the Notice to the Settlement Class is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *accord Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *Redman v. RadioShack Corp.*, No. 11-cv-06741, 2014 WL 497438, at *2 (N.D. Ill. Feb. 7, 2014). The "best notice practicable" does not require receipt of actual notice by all class members. Rather, "notice should be mailed to the last known addresses of those who can be identified." *Mangone v. First USA Bank*, 206 F.R.D. 222, 231-32 (S.D. Ill. 2001) (citations omitted); *see Burns v. Elrod*, 757 F.2d 151, 154 (7th Cir. 1985) (noting that "Rule 23 does not require defendants to exhaust every conceivable method of identification"). In addition, the notice itself must be in easily understood language and must state the class definition, set out the claims at issue, explain that a judgment will be binding on class members unless they opt out, and inform class members that they may enter an appearance through an attorney if they wish. Fed. R. Civ. P. 23(c)(2)(B); *see also In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 351 (N.D. Ill. 2010).

The notice plan approved by the Court has been fully carried out by professional settlement administrator KCC and consisted of direct mail notice sent to every Class Member and the establishment of a settlement website. (*See* Declaration of Scott DiCarlo ("DiCarlo

7

Decl"), ¶¶ 6-11, attached as Exhibit B.)[4]

Of the 6,533 Class Members, notice was mailed to 6,502 addresses. Of those, 332 were returned as undeliverable, though 17 have been remailed to updated addresses. As such, notice was sent directly to 6,187 out of 6,533 Settlement Class Members, or 94.7%. Further, the mailed notice was written in plain English, summarized the key terms of the Settlement, and directed Class Members to the Court-approved "long form" notice that was posted on stonetcpasettlement.com. Through this website, Class Members were able review key documents filed with the Court (including the Settlement Agreement and Class Counsel's request for fees together with information on how to review Class Counsel's billing statements) and receive important updates, including that the hearing date had been moved. (*Id.* ¶ 13.) As the Notice Plan reached over 94% of the Class, it fully satisfies Rule 23 and Due Process. *See* Federal Judicial Center, *Judges Class Action Notice and Claims Process Checklist and Plain Language Guide*, 3 (2010) (concluding that a notice plan that reaches at least 70% of the class is reasonable).

In short, the Notice Plan satisfied due process and supports final approval

## V.     THE SETTLEMENT TERMS SHOULD RECEIVE FINAL APPROVAL

Federal Rule of Civil Procedure 23(e) mandates that "claims, issues, or defenses of a certified class may be settled . . . only with the court's approval . . . after a hearing and finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e); *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 CV 2898, 2012 WL 651727, at *1 (N.D. Ill. Feb. 28, 2012), *appeal dismissed Safeco Ins. Co. of Am. v. Am. Int'l Grp.*, 710 F.3d 754 (7th Cir. 2013). Even still, "[f]ederal courts naturally favor the settlement of class action litigation." *Schulte v. Fifth Third*

---

[4]     LKQ, through KCC, further caused notice to be sent to appropriate United States and state Attorneys General as required by the Class Action Fairness Act, 28 U.S.C. § 1715.

8

*Bank*, 805 F. Supp. 2d 560, 578 (N.D. Ill. 2011) (citing *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996)). Given this predisposition towards favoring settlements, the Court's inquiry as to whether to grant approval "is limited to [the consideration of] whether the proposed settlement is lawful, fair, reasonable and adequate," *Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 986 (7th Cir. 2002) and the "court should not substitute its own judgment as to the best outcomes for the litigants and their counsel. *Redman*, 2014 WL 497438, at *3.

Courts in the Seventh Circuit consider five factors when determining the fairness of a class action settlement:

> [1] the strength of plaintiffs' case compared to the amount of defendants' settlement offer, [2] an assessment of the likely complexity, length and expense of the litigation, [3] an evaluation of the amount of opposition to settlement among affected parties, [4] the opinion of competent counsel, and [5] the stage of the proceedings and amount of discovery completed at the time of settlement.

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (citations omitted); *accord In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 958 (N.D. Ill. 2011). As explained below, each factor weighs in favor of final approval here.

### A. The strength of Plaintiff's case compared to the amount of Defendant's settlement offer overwhelmingly shows the fairness of the Settlement Agreement.

The first factor, which measures the strength of the Plaintiff's case compared with the amount recovered in the Settlement, plainly favors granting final approval here. "The most important factor relevant to the fairness of a class action settlement is the first one listed: the strength of plaintiffs' case on the merits balanced against the amount offered in the settlement." *Synfuel*, 463 F.3d at 653. The strength of a plaintiff's case can be quantified by examining "the net expected value of continued litigation to the class" and then estimating "the range of possible outcomes and ascrib[ing] a probability to each point on the range." *Am. Int'l Grp., Inc.,* 2012 WL 651727, at *2 (quoting *Synfuel*, 463 F.3d at 653); *see Eubank v. Pella Corp.*, 753 F.3d 718, 727

9

(7th Cir. 2014) (finding the court should estimate the likely outcome of a trial in order to evaluate the adequacy of the settlement); *Carnegie v. Household Int'l, Inc*., 445 F. Supp. 2d 1032, 1034 (N.D. Ill. 2006) (The Court "must determine the litigation value of the case and assess the settlement against that value.").

At the same time, "the Seventh Circuit recognizes that a high degree of precision cannot be expected in these calculations" and "[i]nstead, courts are to provide a ballpark valuation of the class's claims." *Am. Int'l Grp., Inc.,* 2012 WL 651727, at *2 (quotations omitted). "In considering the strength of plaintiffs' case, legal uncertainties at the time of settlement favor approval." *In re Sw. Airlines Voucher Litig*., No. 11-cv-8176, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013), appeal dismissed (Jan. 3, 2014). Finally, "[b]ecause the essence of settlement is compromise courts should not reject a settlement solely because it does not provide a complete victory to the plaintiffs." *In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. at 346 (quotations omitted).

At the outset of this case Plaintiff Stone arguably had a strong claim for 77,848 faxes sent to 6,533 recipients in violation of the TCPA, which would have built an impressive case for a $38 million judgment. Of course, LKQ had some potent defenses, including that several class members who had received the faxes for years had likely waived their claims or should be estopped from asserting damages. Likewise, LKQ was able to argue that some class members had even used the faxes to purchase goods from Coast consistent with their on-going business dealings. Further, LKQ indicated that it would seek a waiver from the FCC that would apply to many of the faxes it sent.

Throughout the negotiations, and in addition to LKQ's other arguments, the Parties were keenly aware that the D.C. Circuit Court of Appeals was reviewing the FCC's 2015 TCPA

Order, including specifically the FCC's authority to require opt out language in *solicited* faxes (which would arguably encompass faxes sent between businesses that have established relationships). Just weeks ago, on March 31, 2017, the D.C. Circuit, in a split decision, held in favor of the business that "the FCC may not...require opt-out notices on solicited faxes—that is, opt-out notices on those faxes that are sent with the prior express invitation or permission of the recipient." *Bais Yaakov of Spring Valley v. Fed. Commc'ns Comm'n*, No. 14-1234, 2017 WL 1192909, at *4 (D.C. Cir. Mar. 31, 2017). If it stands, this decision would seriously undercut the ability of much of the Settlement Class in this case to secure any relief in this lawsuit—LKQ would argue that any of the Class Members with an established business relationship gave prior express permission or invitation through their business dealings. Irrespective of whether LKQ would ultimately succeed on such defenses the reality is that the D.C. Circuit's decision undercuts the claims in this case. As such, the fact that any monies were recovered—let alone $3,266,500—is a demonstrably strong outcome for the Settlement Class (particularly where it is being distributed without a claims process and without any reverter).

Ultimately, "it has been held proper to take the bird in hand instead of a prospective flock in the bush." *See Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1323 (S.D. Fla. 2005). That's especially true here given the chances of any "flock" actually existing has dwindled since the start of the case. Put simply, this factor overwhelmingly favors approval here.

      **B.**      **The litigation would have been complex, lengthy, and expensive.**

Final approval is favored in cases where "continued litigation would require resolution of complex issues at considerable expense and would absorb many days of trial time." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1019 (N.D. Ill. 2000); *see also In re AT&T Mobility*, 789 F. Supp. 2d at 964 (recognizing that where a complex class action survives the

11

summary judgment stage, it leads to a "lengthy and expensive" trial).

Continued litigation of this matter would have involved substantial additional discovery followed by briefing on class certification as well as summary judgment. The time and resources required of the Parties and the Court would certainly be significant. Most critically, continued litigation could prove disastrous for the Class Members. While the Settlement secures relief for them, continued litigation could very well result in them obtaining nothing additional despite the magnitude of the additional work that would need to be performed.

As such, this favor militates in support of final approval as well.

### C. There has been no opposition to the Settlement.

As set forth above, there have been only 8 opt outs and <u>no</u> objections. Where a settlement has garnered few or no objectors, courts should view this as further proof that the settlement is fair and reasonable and that class members consider the settlement to be in their best interest. *Am. Int'l Grp.*, 2012 WL 651727, at *1. In those cases where there have been no objectors, or very few, courts have considered this to be "strong circumstantial evidence favoring settlement." *See In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d at 1020-21 (finding that a settlement where "99.9% of class members have neither opted out nor filed objections . . . is strong circumstantial evidence in favor of the settlements"); *In re AT&T Mobility*, 789 F. Supp. 2d at 964-65 ("[I]t is illuminative that only a tiny fraction of the Class Members saw fit to opt out or to object."); *see also Bell Atl. Corp.* v. *Bolger*, 2 F.3d 1304, 1313-14 (3d Cir. 1993) ("Less than 30 of approximately 1.1 million shareholders objected. . . . This small proportion of objectors does not favor derailing settlement."); *accord*, *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005) (fact that only two class members objected out of 300,000 weighed in favor of requested fee award).

12

Also, the fact that only 8 of 6,533 individuals opted out indicates rather clearly that the vast majority of the Settlement Class Members approve of the deal and look forward to receiving their checks.

Put simply, the reaction of the Class has been positive and supports final approval of the Settlement.

**D.      Class Counsel supports the Settlement.**

This factor also supports approval. "The opinion of competent counsel is relevant to the question whether a settlement is fair, reasonable, and adequate under Rule 23." *Schulte*, 805 F. Supp. 2d at 586. This is especially true where Class Counsel are qualified, where discovery and settlement negotiations are extensive and thorough, and where there is no indication of collusion. *Id.*; *see Hispanics United v. Vill. of Addison*, 988 F. Supp. 1130, 1150 n.6 (N.D. Ill. 1997) (noting that a "strong initial presumption of fairness attaches" where the settlement is "the result of arm's length negotiations," and where plaintiff's counsel are "experienced and have engaged in adequate discovery").

Here, Class Counsel have significant experience prosecuting nationwide class actions against businesses that send faxes in violation of the TCPA. (Woodrow Decl. ¶ 20.) In fact, as demonstrated by their firm resumes, Class Counsel devote much of their practices to such litigation. They are respected in the legal community and are aware of the most recent developments in this area of the law. Class Counsel also engaged in both informal and confirmatory discovery in this case and know without a shadow of a doubt that the relief obtained in this lawsuit is a tremendous result—especially given that the D.C. Circuit's decision likely spells substantial doom for such cases going forward. As such, this factor supports granting final approval as well.

13

> **E. The stage of the proceedings, coupled with informal and confirmatory discovery, were sufficient to allow Class Counsel to negotiate a fair, reasonable, and adequate agreement.**

The fifth factor concerning the stage of the proceedings helps determine "how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*, 616 F.2d 305, 325 (7th Cir.1980), o*verruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). This factor is satisfied where, like here, "discovery and investigation conducted by class counsel prior to entering into settlement negotiations was extensive and thorough." *Isby*, 75 F.3d at 1200.

As explained above, in this case Class Counsel received substantial informal discovery prior to the mediation regarding the contours of the proposed class. (Woodrow Decl. ¶ 9.) Additionally, through the mediation process the Parties exchange additional information necessary to evaluate the claims and defenses, including information regarding LKQ's business dealings and relationships with potential class members. (*Id*.) And again, following the mediation Class Counsel reviewed meaningful confirmatory discovery to ensure that the data previously provided was accurate. (*Id*. ¶ 16.)

Put simply, Class Counsel was armed with sufficient information with which to negotiate the instant Settlement.

> **F. The Settlement Is Not a Product of Collusion and Does Not Suffer From "Red Flags."**

Finally, the Court should grant final approval to the Settlement because it raises none of the "red flags" identified by the Seventh Circuit in analyzing class settlements. In *Pella v. Eubank*, 753 F.3d 718, the Seventh Circuit identified five potential indicators of a flawed settlement, including (i) the failure to properly establish the size of the fund and the total class recovery, (ii) the reversion of unawarded attorneys' fees to the defendant, (iii) substantial

14

alterations to existing class definitions, (iv) the use of coupons, rather than cash payments, for class compensation, and (v) overly complicated claim forms. *See Eubank*, 753 F.3d at 723-29.

This Settlement does not raise such red flags, further demonstrating that final approval is appropriate. The Class recovery is easy to measure ($3,266,500), and there was no claims process (so as to call into question the portion of the recovery that will actually find its way to the Settlement Class Members). Further, Plaintiff hasn't substantially sought to alter the Class definition, no coupons are being offered—here the relief is cash—and there were no claims forms. Any unawarded attorneys' fees are scheduled to go to *cy pres*.

Indeed, the only "red flag" is the fact that LKQ agreed not to oppose a fee award of up to one-third of the Settlement Fund. This does not prevent the Court from conducting its own examination of the fee issue, and notably no objections have been raised to the fee request. As set forth in the Motion for Fees, this is an incredibly strong settlement under the circumstances and one-third reflects the market rate.

As such, these final considerations, like the established factors, also support final approval in this case.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant final approval to the Class Action Settlement reached in this case and Order that Final Judgment be entered in favor of the Settlement on the terms set forth in the Settlement Agreement and for such additional relief as the Court deems necessary and just.

Dated: April 20, 2017   **WENDELL H. STONE & COMPANY, INC. d/b/a STONE & COMPANY**, individually and on behalf of all others similarly situated,

By: /s/ Steven L. Woodrow

15

>Steven L. Woodrow
>swoodrow@woodrowpeluso.com
>Patrick H. Peluso*
>ppeluso@woodrowpeluso.com
>Woodrow & Peluso, LLC
>3900 E Mexico Ave., Suite 300
>Denver, Colorado 80210
>Tel: 720.213.0675
>Fax: 303.927.0809
>
>*Pro hac vice*
>
>Marc McCallister
>mem@mccallisterlawgroup.com
>McCallister Law Group
>120 North LaSalle St., #2800
>Chicago, IL 60602
>(312) 345-0611
>
>Stefan L. Coleman, Esq.
>LAW OFFICES OF STEFAN COLEMAN, P.A.
>201 South Biscayne Boulevard, 28th Floor
>Miami, Florida 33131
>Tel: 877.333.9427
>law@stefancoleman.com

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on April 20, 2017, I served the above and foregoing papers by causing such paper to be filed with the Court using the Court's electronic filing system, which will send copies of such paper to all counsel of record.

/s/ Steven L. Woodrow