# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| WENDELL H. STONE COMPANY, INC. d/b/a STONE & COMPANY, individually and on behalf of all others similarly situated, | Case No. 1:16-cv-07648 |
| Plaintiff, | |
| v. | Hon. Matthew F. Kennelly |
| LKQ CORPORATION, a Delaware corporation | |
| Defendant | |

**DECLARATION OF ATTORNEY STEVEN L. WOODROW IN SUPPORT
OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

I, Steven L. Woodrow, declare as follows:

1.      I am over the age of eighteen (18), and am one of the attorneys for Plaintiff and the Class in this matter. I make this declaration in support of Plaintiff's Motion for Final Approval of Class Action Settlement in the above captioned litigation. I am able to testify to the matters set forth herein if called upon to do so. I make the following statements based upon my own personal knowledge and based on facts learned during the litigation of this case.

**Class Counsel's Pre-*Suit Investigation and Early Litigation***

2.      Prior to filing the instant lawsuit my firm, in conjunction with our co-counsel, conducted an investigation into LKQ/Coast Distribution's facsimiles, specifically the sufficiency of the faxes' opt-out language and LKQ's liability for faxes sent by Coast Distribution.

3.      Through this investigation, we communicated regularly with our client regarding the particulars of its experience with LKQ, including testing Stone's receipt of the faxes, relationship with LKQ, LKQ's responsibility for faxes sent by Coast Distribution, and the legal landscape surrounding the sending of faxes with insufficient opt out language under the

1

Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq.; 47 C.F.R. 64.1200 *et seq.*,

particularly fax opt out language cases in the wake of the Supreme Court's decision in *Spokeo,*

*Inc. v. Robins*, 136 S. Ct. 1540, 1543, 194 L. Ed. 2d 635 (2016), *as revised* (May 24, 2016), and

the FCC's July 2015 Order (*see In re Rules and Regulations Implementing the TCPA of 1991,*

Declaratory Ruling and Order, CG Docket No. 02–278, WC Docket No. 07–135, FCC 15–72, ¶¶

49, 52, 2015 WL 4387780 (released Jul. 10, 2015), https://www.fcc.gov/document/tcpa-

omnibus-declaratory-ruling-and-order) (last visited April 19, 2017)).

4.     Once our investigation was complete we outlined a case strategy, and we

reviewed and edited the initial draft of the pleadings in the case, which included the Class Action

Complaint. We thereafter filed the Complaint on July 28, 2016 (dkt. 1) and obtained service.

***The Parties Commence Early Settlement Discussions and Proceed to Mediation***

5.     On August 28, 2016, the Court set an initial status conference for September 26,

2016. (Dkt. 3.) In early September, defense counsel from the prestigious Chicago law firm of

Shook, Hardy & Bacon reached out via email to indicate that they were representing LKQ. LKQ

requested additional time to answer or otherwise plead, and the Parties worked out the language

of an agreed upon extension.

6.     During these early talks counsel for the Parties also exchanged their 30,000 ft.

overviews of the claims and defenses and broached the subject of settlement. During subsequent

communications between counsel, potential settlement models were reviewed and discussions

began to turn to the possibility of engaging in a private mediation process and the information

that Plaintiff's counsel needed prior to being able to negotiate effectively.

7.     During this period, and so as to protect the class claims against any "buy off"

attempts under Rule 67, on September 23, 2016 Class Counsel filed a "placeholder" motion for

class certification. (Dkt. 12.) While just a few months back this was perhaps considered

unnecessary, the law in this District was called somewhat into question by Judge Chang's

decision in *Fulton Dental, LLC v. Bisco, Inc.*, No. 15 C 11038, 2016 WL 4593825 (N.D. Ill.

Sept. 2, 2016).

8.      Meaningful progress was made in the run up to the Court's initial status

conference with respect to setting up a mediation, and during the Rule 16(b) conference held

October 21, 2016 the Parties advised the Court that they were preparing to mediate the case and

requested a brief period of time to do so. (Dkt. 15.) The Court set a status for late November to

ensure a mediation had been scheduled. During the telephonic status of November 22, 2016, the

Parties advised that they were proceeding to mediation with the Honorable Morton J. Denlow

(Ret.) of JAMS in Chicago, Illinois on December 19, 2016 (Dkt. 18.)

***Mediation With Magistrate Judge Denlow (Ret.)***

9.      The Parties performed substantial work in the lead up to the mediation with

Magistrate Judge Denlow. In addition to providing significant briefing, Magistrate Judge Denlow

utilizes a "class action checklist" that requires additional consideration. Additionally, the Parties

exchanged information on a more informal basis through sets of emailed questions. This

included information about the size of the class and the nature of Coast Distribution's prior

business dealings with certain of the class members. This was relevant given the D.C. Circuit's

then-pending review of the FCC's Fax Order, including the Commission's ability to require opt-

out language on faxes sent by persons who have prior business relationships with fax recipients.

10.     Class Counsel flew to Chicago for the mediation. During the process, counsel for

the Parties were able to engage in an open and frank discussion about the merits of how each

viewed the merits of the claims and defenses, and Magistrate Judge Denlow's process helped the

Parties focus on a framework that would maximize the Settlement Class's overall recovery.

11. Ultimately, and with Judge Denlow's substantial assistance, the Parties were able to reach an agreement in principle with respect to the Settlement's key terms. Only after an agreement was reached with respect to the relief to be made available to the Settlement Class did the Parties discuss reasonable attorneys' fees and incentive awards. While LKQ has agreed not to object to an amount seeking up to one-third of the proposed Settlement Fund, the Parties *always* understood that the amount of any fees would ultimately be subject to the Court's approval.

12. The Parties left the mediation with a signed term sheet and worked together in the weeks following the mediation to efficiently draft formal settlement documents and have them executed.

### *The Parties Work to Obtain Preliminary Approval & Notice Is Issued to the Class*

13. The Parties exchanged drafts of the Settlement Agreement and notice documents. Once the finer details of the Settlement Agreement and the notices were finalized and the agreement was executed, Class Counsel drafted the papers in support of Preliminary Approval and traveled to Chicago for the Preliminary Approval Hearing held January 25 2017.

14. During the hearing the Court indicated that the Settlement would receive preliminary approval. (Dkt. 26.)

15. Since the Court's grant of preliminary approval, Class Counsel and LKQ's attorneys have worked in tandem to implement the Settlement, which has included working to finalize and approve the Settlement Website and notice documents and communicating regularly with the Settlement Administrator (KCC) regarding mailings, opt outs, and re-mailings. Class Counsel have also assisted Settlement Class Members who have contacted their offices with questions regarding the Settlement's terms and process.

16.     Class Counsel have additionally reviewed meaningful confirmatory discovery to ensure that the data previously disclosed regarding the class size was accurately tabulated. Further, Class Counsel has had to keep abreast and evaluate the impact of the D.C. Circuit's ruling striking down the FCC's rule that companies with established business relationships have no claim under the TCPA for faxes that fail to contain opt out language.

***Response to the Settlement***

17.     After notice was disseminated, Class Counsel's law firm received several calls from Settlement Class Members seeking additional information about the nature of the claims and the relief made available under the settlement agreement.

18.     At the end of the claims process, only 8 Settlement Class Members have elected to opt-out and none have objected, signaling overwhelming satisfaction with the results.

19.     If the Court ultimately awards amounts from the Settlement as contemplated by the Agreement, then the Settlement Class Members will receive checks for approximately $330—a per claim amount that nearly doubles the amount typically awarded in TCPA class action settlements (according to our research).

***Class Counsel*'s Experience and Opinion of the Settlement**

20.     Class Counsel have significant experience prosecuting nationwide class actions against businesses that send faxes in violation of the TCPA—in fact, we devote much of a practice to TCPA class actions. (*See* Firm Resumes, attached hereto as Exhibit 1.) In fact, as demonstrated by their firm resumes, Class Counsel devote much of their practices to such litigation.

21.     Class Counsel are respected in the legal community and are aware of the most recent developments in this area of the law—including the recent D.C. Circuit decision that

5

would have significantly undermined the class's position in this case should it have proceeded.

22.     Class Counsel received substantial informal discovery prior to the mediation regarding the contours of the proposed class. Additionally, through the mediation process the Parties exchange additional information necessary to evaluate the claims and defenses, including information regarding LKQ's business dealings and relationships with potential class members. And after the mediation Class Counsel reviewed meaningful confirmatory discovery to ensure that the data previously provided was accurate.

23.     It is my opinion that the terms of the settlement are unquestionably strong when viewed against other TCPA fax opt-out language settlements reached to date. This is especially true after the recent D.C. Circuit decision—the Class would face an uphill battle if the case went forward.

Further affiant sayeth not.

        Signed this 20th day of April, 2017 in Denver, Colorado.


                                        /s/ Steven L. Woodrow
                                        Steven L. Woodrow

6

# EXHIBIT 1

# WOODROW & PELUSO, LLC FIRM RESUME

WOODROW & PELUSO, LLC ("Woodrow & Peluso" or the "firm") is a plaintiff's class action and commercial litigation firm based in Denver, Colorado. The firm files cases across the Country.

Our attorneys have over a decade of experience successfully representing consumers and small businesses in matters nationwide. From litigation under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*., to cases enforcing the rights of job applicants and employees under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*., to appeals of first impression, our lawyers have litigated and favorably resolved numerous legal disputes to the satisfaction of our clients. At Woodrow & Peluso, LLC, we take special pride in the quality of our work product and strive tirelessly to achieve the best results for every client. Descriptions of our three primary practice areas—(1) Consumer Class Actions, (2) Commercial Litigation, and (3) Appeals—and key personnel follow.

## OUR PRACTICE AREAS

## 1.   CONSUMER CLASS ACTIONS

The majority of the firm's caseload focuses on consumer class actions. These cases include class actions alleging violations of statutes, such as the Fair Credit Reporting Act, the Telephone Consumer Protection Act, and the Truth-in-Lending Act, as well as class actions challenging systematic breaches of contract and advancing other common law theories.

**TCPA Class Actions**

Since opening the firm's doors, Woodrow & Peluso attorneys have focused on litigating class actions challenging violations of the Telephone Consumer Protection Act. To date we have filed, prosecuted, and resolved using various settlement models TCPA cases against major corporations and entities including J.B. Hunt, Altisource, Acurian, Price Self Storage, Local Lighthouse, Global Marketing Research Services, Geekatoo, Rita's Italian Ice, Roomster, LKQ, among many others. Our firm's attorneys have substantial experience prosecuting such claims, including class actions challenging the unlawful transmission of text messages, the sending of unlawful facsimiles, the placement of "robocalls" featuring a pre-recorded voice to residential landline phones, and the use of automatic telephone dialing systems, including predictive dialers, to call consumer cell phones.

The attorneys of Woodrow & Peluso LLC, in the case of *Martin et al. v. Global Marketing Research Services, Inc.* (6:14-cv-1290-ORL-31-KRS) (M.D. Fla.) were appointed Settlement Class Counsel and secured Final Approval of a TCPA settlement featuring the establishment of a $10 million Common Fund.

While a Partner with his prior law firm, Woodrow & Peluso attorney Steven Woodrow was appointed interim co-lead class counsel in a TCPA class action against Nationstar Mortgage, LLC (*see Jordan et al v. Nationstar Mortgage LLC*, 3:14-cv-00787-WHO) and led TCPA litigation that resolved favorably against Bankrate Inc., and Carfax.com. Mr. Woodrow was also

involved in the TCPA settlement reached in *Weinstein v. The Timberland Co. et al.* (N.D. Ill.), a text messaging class action featuring 40,000 unauthorized messages, and was part of the appellate strategy team that secured the landmark decision in *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009), the first federal appellate decision to affirm that text messages are covered as "calls" under the TCPA.

### FCRA Class Actions

The second sub-focus within the firm's class action practice consists of cases under the Fair Credit Reporting Act ("FCRA"), which regulates the procurement and use of consumer reports by employers when they make hiring/firing/pay decisions. To date, the firm has successfully represented clients in putative class actions against Terminix, ServiceMaster, WinCo Foods, TrueBlue Inc./Labor-Ready Mid-Atlantic, FedEx, Tyler Staffing Services, Inc., Great Lakes Wine & Spirits, and many others.

### Banking and Financial Institutions Class Actions

Our attorneys have substantial experience representing consumers in class action litigation involving national banking associations and other financial institutions. Meaningful representations include:

- *Schulken v. Washington Mut. Bank*, No. 09-CV-02708-LHK, 2012 WL 28099, at *15 (N.D. Cal. Jan. 5, 2012). Attorney Steven Woodrow secured prior firm's appointment as Class Counsel from Judge Lucy Koh in class action challenging JPMorgan Chase Bank, N.A.'s suspension of former WaMu home equity line of credit accounts. Case settled with Mr. Woodrow's appointment as co-lead settlement class counsel.

- *In re JPMorgan Chase Bank, N.A. Home Equity Line of Credit Litigation*, MDL No. 2167. Attorney Steven Woodrow helped secure transfer by the Judicial Panel on Multidistrict Litigation to the Northern District of Illinois and appointment of prior firm as interim class counsel. Attorney Woodrow also negotiated and was also appointed co-lead settlement class counsel in settlement projected to restore between $3 billion - $5 billion in credit to affected borrowers in addition to cash payments.

- *Hamilton v. Wells Fargo Bank, N.A.*, 4:09-cv-04152-CW (N.D. Cal.). Attorney Steven Woodrow served as co-lead settlement counsel in class action challenging Wells Fargo's suspensions of home equity lines of credit. Nationwide settlement restored access to over $1 billion in credit and provided industry leading service enhancements and injunctive relief.

- *In re Citibank HELOC Reduction Litigation*, 09-CV-0350-MMC (N.D. Cal.). Attorney Steven Woodrow was appointed interim co-lead counsel and settlement class counsel in class actions challenging Citibank's suspensions of home equity lines of credit. The settlement was estimated to

have restored over $650,000,000 worth of credit to affected borrowers.

- *Vess v. Bank of America, N.A.* 10cv920–AJB(WVG) (S.D. Cal.). Attorney Steven Woodrow negotiated class action settlement with Bank of America challenging suspension and reduction of home equity lines of credit.

- *Wigod v. Wells Fargo*, No. 10-cv-2348 (N.D. Ill.). Steven Woodrow secured the first appellate decision in the country recognizing the right of homeowners to sue under state law to enforce HAMP trial plan agreements. Attorney Steven Woodrow was appointed co-lead settlement counsel providing loan modifications and cash payments to affected borrowers.

**General Consumer Protection Class Actions**

Woodrow & Peluso attorneys have additionally successfully prosecuted and resolved countless class action suits against other companies for a range of consumer protection issues. For example, Woodrow & Peluso filed the first class action in the Country to challenge the marijuana industry's use of certain allegedly dangerous fungicides and pesticides and were the first lawyers to bring class actions (against the Colorado Rockies Baseball Club and Kroenke Sports & Entertainment, LLC) seeking to enforce the Colorado Consumer Protection Act, § 6-1- 718 *et seq*., which prohibits owners of entertainment venues from imposing restrictions on the resale of tickets. The firm has also brought and litigated class actions against hospitals for their use of "chargemaster" billing rates and are presently engaged in litigation against Southwest Airlines related to its "Companion Pass" program.

Woodrow & Peluso LLC has also brought claims against major food manufacturers and distributors for falsely advertising certain products as "All Natural" and "Made in U.S.A." Our attorneys also have experience litigating class claims regarding missing or misappropriated "bitcoins." Woodrow & Peluso also brought the first class action in Colorado against cannabis growers for their use of unapproved and harmful pesticides.

## 2.   COMMERCIAL LITIGATION

As small business owners, we understand and appreciate the challenges that new companies face as they strive to make headway in the market. Our attorneys regularly counsel small businesses and have represented such companies in a wide range of general commercial litigation matters including partnership and business disputes, breaches of contracts and term sheets, and claims charging company managers and members of breach of fiduciary duty, breach of contract, fraud, and fraudulent/preferential transfer. We regularly advise clients on matters and contracts involving millions of dollars, and our attorneys have successfully represented businesses and other entities in mediations, arbitrations, and trial.

## 3.   APPEALS

Our attorneys have substantial experience handling appeals at both the state and federal level. Representative appeals worked on predominately by our attorneys include:

- *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012). Attorney Steven Woodrow briefed and argued this appeal resulting in the first federal appellate decision holding that banks may be sued under state law for violations of the federal government's Home Affordable Modification Program. The opinion has been cited over 1,300 times by courts, litigants, and commentators throughout the Country and is widely regarded as the leading authority on the rights and obligations of HAMP servicers and borrowers.

- *Robins v. Spokeo*, 742 F.3d 409 (9th Cir. 2014). Attorney Steven Woodrow argued a federal appeal reversing dismissal and upholding consumer rights under the Fair Credit Reporting Act against one of the nation's largest online data aggregators regarding whether a plaintiff who does not suffer tangible pecuniary loss may still show legal harm to satisfy Article III standing. The case is currently pending before the United States Supreme Court and has been frequently reported on as one of three major class action issues presently on the Supreme Court's docket.

- *Equity Residential Properties Mgmt. Corp. v. Nasolo*, 364 Ill. App. 3d 26, 28, 847 N.E.2d 126, 128 (2006). Attorney Steven Woodrow helped author the winning brief in this landmark landlord/tenant appeal defining the requirements for constructive service and due process for Illinois evictions under the Illinois Forcible Entry and Detainer Act. 735 ILCS 5/9–107 *et seq*.

- *Fuentes v. Kroenke Sports & Entertainment, LLC*, Case No. 2014CV32619. Woodrow & Peluso appealed grant of summary judgment in favor of defendant finding that the Colorado Consumer Protection Act, 6-1-701 *et seq*. does not allow for class actions. Case settled prior to the resolution of the appeal.

### OUR ATTORNEYS

At present, our firm consists of 2 attorneys whose relevant experience is set forth below.

**STEVEN LEZELL WOODROW** has over a decade of experience advising consumers and small businesses in high stakes litigation.

Steven briefed and delivered the winning argument in the landmark federal appellate court decision *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012) holding banks accountable for violations of the federal Home Affordable Modification Program. The opinion is widely regarded as the leading authority on the rights and obligations of HAMP servicers and borrowers. Steven also delivered the winning oral argument in *Robins v. Spokeo*, 742 F.3d 409 (9th Cir. 2014), a

federal appeal upholding consumer rights under the Fair Credit Reporting Act against one of the nation's largest online data aggregators. The case is presently set for argument before the United States Supreme Court.

Mr. Woodrow was appointed lead class counsel in litigation against JPMorgan Chase Bank, N.A. challenging the bank's 4506-T HELOC suspension program and was appointed settlement class counsel in other HELOC litigation against Wells Fargo Bank, N.A., Citibank, N.A., Chase, Bank of America, N.A. and PNC Bank.

Mr. Woodrow also led the legal team that secured a preliminary injunction freezing the U.S. assets of Mark Karpeles, the former head of the failed Bitcoin exchange known as Mt. Gox, as well as an order compelling Mr. Karpeles to personally appear in the United States for a deposition in connection with Mt. Gox's Chapter 15 bankruptcy case in Dallas Texas.

Steven has also litigated putative class actions under the Telephone Consumer Protection Act, and courts have appointed him to serve as class counsel in nationwide settlements against cellphone companies, aggregators, and mobile content providers related to unfair billing practices, including *Paluzzi v. Cellco Partnership*, *Williams v. Motricity, Inc.*, and *Walker v. OpenMarket Inc.*

Steven has also served as an Adjunct Professor of Law at the Illinois Institute of Technology Chicago-Kent College of Law, where he co-taught a seminar on class actions. Prior to founding Woodrow & Peluso, Steven was a partner at prominent class action technology firm in Chicago.

Before that, he worked as a litigator at a Chicago boutique where he tried and arbitrated a range of consumer protection, landlord tenant, and real estate matters.

**EDUCATION**
Chicago-Kent College of Law, J.D., High Honors, 2005
The University of Michigan—Ann Arbor, B.A, Political Science, *with Distinction*, 2002

**ADMISSIONS**
State of Colorado (2011)
State of Illinois (2005)
United States Court of Appeals for the Seventh Circuit
United States Court of Appeals for the Ninth Circuit
United States District Court, District of Colorado
United States District Court, Northern District of Illinois
United States District Court, Eastern District of Michigan
United States District Court, Western District of Michigan
United States District Court, District of New Mexico
United States District Court, Western District of Wisconsin

**PATRICK H. PELUSO** specializes in plaintiff-side consumer class actions.

With a true passion for protecting consumers and their rights, Patrick aggressively pursues class action lawsuits against companies who violate those rights.

Through these lawsuits, he is able to force law-breaking companies to compensate the people they have harmed and correct their future practices. Patrick possesses the skills, strategic vision, and moxie to achieve excellent results for the people he represents. He has experience working with a broad range of consumer protection laws including the Fair Credit Reporting Act, the Telephone Consumer Protection Act, and various state consumer protection and consumer fraud statutes.

Patrick received his law degree from the University of Denver, Sturm College of Law where he was Editor-in-Chief of an academic journal. During law school, Patrick worked with a leading consumer class action law firm and held legal internships with a federal administrative judge and the legal department of a publicly-traded corporation. Before law school, Patrick attended New York University, where he graduated with a B.S. and played on the school's club baseball team.

Patrick grew up in Baltimore, Maryland and now resides in Denver, Colorado.

**EDUCATION**
University of Denver, J.D. 2014
New York University, B.S.

**ADMISSIONS**
State of Colorado (2014)
United States District Court, District of Colorado
United States District Court, District of New Mexico
United States District Court, Western District of Wisconsin

## LAW OFFICES OF STEFAN COLEMAN, P.A. RESUME

### INTRODUCTION

The Law Offices of Stefan Coleman, P.A. is a boutique class action law firm that concentrates its practice on consumer law and technology.  The core of the law firm is based on an in-depth knowledge of an ever-evolving technology and its impact on the law and consumers. Specifically, the firm has devoted much of its practice to protecting consumer privacy rights by the mechanism of the Telephone Consumer Protection Act as well as protecting consumers against product defects and deceptive advertising.  The firm also works on behalf of companies to alert them to the most recent changes and evolutions in the law as it applies to their industry. The firm is grateful to have litigated a number of significant class actions on behalf of consumers in its tenure.

### TELEPHONE CONSUMER PROTECTION ACT CASES

- *In re Jiffy Lube,* a Telephone Consumer Protection Act case that resulted in a $35 million recovery for consumers for the unsolicited text message advertising. Several major issues of law were settled in this case resulting in a massive victory for consumers.

- *Pimental v. Google Inc.*, a Telephone Consumer Protection Act case that alleged that defendant co-opted group text messaging lists to send unsolicited text messages. $6 million settlement provided class members with an unprecedented $500 recovery.

- *Woodman v. ADP Dealer Services, Inc., et al.,* a Telephone Consumer Protection Act case that resulted in a $7.5 million settlement for consumers who received unsolicited text messages promoting car sales.

- *Lanza v. Palm Beach Holdings., et al.,* a Telephone Consumer Protection Act case that resulted in a $6.5 million settlement for consumers who received unsolicited text messages.

- *Kolinek v Walgreen, Co.* a Telephone Consumer Protection Act case that resulted in an $11 million settlement for consumers who received unsolicited calls to their cell phone.

- *Hopwood v. Nuance Communications., et al.,* a Telephone Consumer Protection Act case that resulted in a $9.24 million settlement for consumers who received unsolicited calls.

- *Flanigan v. The Warranty Group, Inc. and American Protection Plans LLC d/b/a American Residential Warranty*., a Telephone Consumer Protection Act case that resulted in a $16 million settlement for consumers who received unsolicited calls.

- *Brown v. Rita's Water* Ice, a Telephone Consumer Protection Act case that resulted in a $3 million settlement for consumers who received unwanted text messages.

### PRODUCT LIABILITY AND FALSE ADVERTISING CLASS ACTIONS

- *Love v. IdeaVillage Products Corp et al*, a consumer class action in which certain purchasers could recover a full refund for their purchase of an alleged defective product sold by the defendant. This case resulted in the defendant changing its business practice.

- *Xexo v. iRenew Bio Energy Solutions et al*, a consumer class action in which purchasers of the iRenew bracelet recovered for the alleged false advertising by the defendant.

- *Oliver v. Funai Corporation, Inc. et al.,* a consumer class action currently in litigation seeking relief for those who purchased televisions made by Funai Corporation, Inc.

**GENERAL CONSUMER PROTECTION CLASS ACTIONS**

*Wornicki v. BrokerPriceOpinion, et al.,* a general consumer class action currently in litigation seeking back-pay for thousands of realtors who provided broker price opinions but who did not receive payment.

**STEFAN COLEMAN**

Stefan Coleman, Esq. is a graduate of the University of Virginia and the University of Miami School of Law. He has practiced law for over nine years and a half years in which time he has participated in a number of significant class actions on behalf of consumers. In addition, Stefan advises companies on their compliance and marketing guidance, as well as advising them on business development.

**EDUCATION**
University of Virginia, 2003
University of Miami, J.D. 2006
University of Miami, LLM 2007

**ADMISSIONS**
State of Florida (2006)
District of Columbia (2008)
State of New York (2009)
State of New Jersey (2009)
New Jersey State Court (2009)
New York State Court (2009)
Colorado District Court (2009)
Central District of Illinois (2009)
Northern District of Illinois (2009)
Southern District of Illinois (2009)
Southern District of New York (2009)
Northern District of New York (2009)
Western District of New York (2009)
New Jersey District Court (2009)
Northern District of Texas (2009)

District Court of Nebraska (2009)
Western District of Michigan (2009)
Eastern District of Wisconsin (2009)
Northern District of Florida (2009)
Middle District of Florida (2009)
Southern District of Florida (2010)